**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **RODNEY A. HURDSMAN, on behalf,** | § | |
| **of himself and all others** | § | |
| **similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 1:22-cv-0254-RP-DH** |
| **MIKE GLEASON, Sheriff of Williamson** | § | |
| **County, Texas; COUNTY OF** | § | |
| **WILLIAMSON, Texas; and INMATE** | § | **JURY TRIAL REQUESTED** |
| **CALLING SOLUTIONS, d/b/a** | § | |
| **ICSolutions,** | § | |
| | § | |
| **Defendants.** | § | |

---

### COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**TO THE UNITED STATES DISTRICT JUDGE:**

Pursuant to Federal Rule of Civil Procedure 56, Defendants SHERIFF MIKE GLEASON ("Sheriff Gleason") and WILLIAMSON COUNTY, TEXAS ("the County") (collectively, the "County Defendants") file this Motion for Summary Judgment and respectfully requests the Court find that Plaintiff Rodney A. Hurdsman's ("Hurdsman") claims are barred as a matter of law and grant summary judgment in their favor.

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................... iii

INDEX OF SUMMARY JUDGMENT EVIDENCE .............................................................................. v

I.    NATURE & STAGE OF PROCEEDINGS ............................................................................ 1

II.   SUMMARY OF ARGUMENT ............................................................................................ 2

III.  STATEMENT OF ISSUES ................................................................................................ 3

IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................................... 3

      A.    *Hurdsman I* involved the Same County Defendants and Was Resolved By
            Execution of the Settlement Release ........................................................... 3

      B.    The Instant Action ......................................................................................... 5

V.    ARGUMENTS & AUTHORITIES ...................................................................................... 3

      A.    Summary Judgment is Appropriate Because There are No Genuine Issues of
            Material Fact .................................................................................................. 5

      B.    The Court Should Enforce the Plain Language of the Settlement Release ............. 6

      C.    The Settlement Release Applies to the Hurdsman's Causes of Actions Here ........ 7

      D.    Releases Covering Unknown and Later-Discovered Claims are Enforceable ........ 9

VI.   CONCLUSION AND PRAYER ........................................................................................ 11

## TABLE OF AUTHORITIES

<u>CASES</u>

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................... 5

*Childers v. Pumping Sys., Inc.*, 968 F.2d 565 (5th Cir. 1992) ...................................... 6

*Coker v. Coker*, 650 S.W.2d 391 (Tex. 1983) .............................................................. 6

*Commc'ns Transmission, Inc. v. TriStar Commc'ns, Inc.*, 798 F. Supp. 406
   (W.D. Tex. 1992) .......................................................................................................... 6

*Deer Creek, Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198
   (Tex. App.—Dallas 1990, no writ) ............................................................................ 8

*Forsyth v. Barr*, 19 F.3d 1527 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994) ................ 6

*Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   20 S.W.3d 692 (Tex. 2000) ........................................................................................ 7

*Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295 (5th Cir. 1983) ............. 9, 10

*Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987) ................... 5

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ..................................................... 6

*Martin v. Brown Schools Educ. Corp.*, No. 3:02-cv-0144G, 2003 WL 21077454
   (N.D. Tex. 2003) ...................................................................................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................... 6

*McGinnis v. Star Enter.*, 8 F.3d 20, 1993 WL 455587 (5th Cir. 1993) ......................... 8

*Mendoza-Gomez v. Union Pac. R.R.*, No. 21-20397, 2022 WL 1117698
   (5th Cir. Apr. 14, 2022) ........................................................................................... 5

*Monell v. New York Department of Social Services*, 436 U.S. 685 (1978) ................... 1

*Pace Concerts, Inc. v. Smith*, 990 F.2d 626, 1993 WL 117811 (5th Cir. 1993) ........ 6, 7

*Shackleford v. St. Michael Healthcare Ctr.*, 205 F.3d 1338
   1999 WL 1338422 (5th Cir. 1999) .......................................................................... 10

*Shelton v. Exxon Corp.*, 921 F.2d 595 (5th Cir. 1991) ................................... 6, 7, 10, 11

*Southmark Corp. v. F.D.I.C.*, 142 F.3d 1279, 1998 WL 22453 (5th Cir. 1998) ...... 9, 10

*Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726 (Tex. 1981) .................................................. 6

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992) ........................................................ 6

*White v. Grinfas*, 809 F.2d 1157 (5th Cir. 1987) ........................................................... 9

<u>STATUTES AND RULES</u>

FED. R. CIV. P. 56 ................................................................................................................. i,5

18 U.S.C. § 2511(a) ............................................................................................................. 1

42 U.S.C. § 1983 .......................................................................................................... 1, 3, 4, 8

Article § 16.02(b) of the Texas Penal Code .......................................................................... 1

## INDEX OF SUMMARY JUDGMENT EVIDENCE

The County Defendants incorporate by reference the following evidence:

Exhibit A –     Plaintiff's Original Complaint in *Hurdsman I* (*Hurdsman v. Pokluda, et al.*, No. 1:17-cv-00290-RP-AWA; in the United States District Court for the Western District of Texas, Austin Division)

Exhibit B –     Order Appointing Counsel for Plaintiff in *Hurdsman I* (*Hurdsman v. Pokluda, et al.*, No. 1:17-cv-00290-RP-AWA; in the United States District Court for the Western District of Texas, Austin Division)

Exhibit C –     Executed Release of All Claims and Indemnity Agreement, signed August 26, 2020

Exhibit D –     Joint Motion to Dismiss in *Hurdsman I* (*Hurdsman v. Pokluda, et al.*, No. 1:17-cv-00290-RP-AWA; in the United States District Court for the Western District of Texas, Austin Division)

Exhibit E –     Dismissal Order in *Hurdsman I* (*Hurdsman v. Pokluda, et al.*, No. 1:17-cv-00290-RP-AWA; in the United States District Court for the Western District of Texas, Austin Division)

Exhibit F –     Final Judgment in *Hurdsman I* (*Hurdsman v. Pokluda, et al.*, No. 1:17-cv-00290-RP-AWA; in the United States District Court for the Western District of Texas, Austin Division)

## I.    NATURE & STAGE OF PROCEEDINGS

This matter arises from Hurdsman's pretrial incarceration in the Williamson County Jail ("WCJ") from April 28, 2015, to July 7, 2017.  Hurdsman is currently incarcerated in the Texas Department of Criminal Justice Robertson Unit in Abilene, Texas, and is appearing *pro se*.

Hurdsman filed his Original Complaint on March 14, 2022.[1]  On June 16, 2022, Hurdsman amended his Complaint to add Inmate Calling Solutions, d/b/a/ ICSolutions as a defendant.[2]  Generally, Hurdsman alleges that the County Defendants recorded his phone calls with his attorneys and disclosed them to federal and state law enforcement agencies.  Hurdsman seeks class treatment.

Hurdsman alleges numerous constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the County Defendants: (1) First Amendment infringement of freedom of speech and association; (2) Fourth Amendment illegal search and seizure; (3) Sixth Amendment interference with the attorney-client relationship; (4) Fourteenth Amendment denial of access to courts; and (5) a *Monell* claim.  Hurdsman further alleges federal and state claims for wiretapping pursuant to 18 U.S.C. § 2511(a) and Article § 16.02(b) of the Texas Penal Code.  Hurdsman also alleged various state law claims, including: (1) invasion of privacy; and (2) unlawful concealment.

On June 17, 2022, the County Defendants were served with Hurdsman's Interrogatories and Requests for Production to the County Defendants.  The County Defendants timely filed a Motion for Protective Order and Motion to Stay Discovery arguing, in part, that discovery should be stayed because Hurdsman's litigation against the County Defendants is barred by the Release of All Claims and Indemnity Agreement ("Settlement Release") signed by Hurdsman to resolve a previous lawsuit by him against the County, Sheriff Gleason, and other County employees.  The County Defendants now timely move for summary judgment on the same grounds.

---

[1]  Pl.'s Original Compl., Dkt. No. .1
[2]  Pl.'s Am. Compl., Dkt. No. 17.

## II.   SUMMARY OF ARGUMENT

In a previous lawsuit by Hurdsman against the County Defendants in this Court ("*Hurdsman I*"),[3] the County Defendants and Hurdsman entered into a valid Settlement Release concerning Hurdsman's same incarceration in the WCJ "from April 28, 2015–July 7, 2017."[4]  By entering into the Settlement Release, Hurdsman agreed that the "consideration stated herein shall be the full compensation for me for all injuries and damages, known and unknown, past and future, directly or indirectly resulting from or in any matter related to the above-described incarceration in the WCJ giving rise to the Litigation."  He also "intend[ed] this Release [of claims] to be as broad and comprehensive as possible and to encompass any claims that [he] presently ha[s] or may acquire or discover in the future."

Pursuant to the Settlement Release, all of Hurdsman's causes of action against the County Defendants in the instant action are barred as a matter of law.  First, the language of the Settlement Release is plain and unambiguous.  The Court should interpret the Settlement Release as written and give force to the contract language.  Second, the Settlement Release explicitly applies to both the County and Sheriff Gleason and all the federal and state causes of action asserted here, whether they were known or unknown at the time of signing.  Lastly, and most importantly, it is well-settled in this Circuit that broad releases of future and unknown claims are valid and enforceable to bar subsequent litigation.

Based on the summary judgment record here, Hurdsman cannot raise a genuine issue of material fact, and, accordingly, summary judgment is appropriate.

---

[3]  *Hurdsman v. Pokluda, et al.*, No. 1:17-cv-00290-RP-AWA, in the United States District Court for the Western District of Texas, Austin Division ("*Hurdsman I*").
[4]  Ex. C, Executed Release of All Claims and Indemnity Agreement, at 1–2.

### III.   STATEMENT OF ISSUES

1.      Whether the instant action is barred as a matter of law because Hurdsman released all claims he may have against the County Defendants when he signed the Settlement Release in *Hurdsman I.*

### IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The County Defendants contend the following material facts are undisputed and are supported by the summary judgment evidence attached here.

**A.   *Hurdsman I* Involved the Same County Defendants and Was Resolved By Execution of the Settlement Release**

On April 3, 2017, Hurdsman filed *Hurdsman I* pursuant to Section 1983 against the County, Sheriff Gleason, and fourteen (14) other former and current employees of the Williamson County Sheriff's Office based on conduct that occurred during his April 28, 2015, to July 7, 2017 incarceration in the WCJ.[5]  He asserted more than nine (9) causes of action and sought monetary, declaratory, and injunctive relief.[6]  Hurdsman represented himself *pro se* for a majority of the litigation of *Hurdsman I.*

After extensive discovery, dispositive motions, and an interlocutory appeal to the Fifth Circuit on qualified immunity issues, the Court appointed two (2) trial counsel and two (2) separate appellate counsel for Hurdsman.[7]

After Hurdsman was represented by counsel, the Parties engaged in mediation, which was ultimately successful.  The Parties' agreement was memorialized in the Settlement Release, which Hurdsman signed and had notarized on August 26, 2020.[8]  Subsequently, the Parties jointly moved for the Court to dismiss with prejudice *Hurdsman I*,[9] and the Court did so on October 13, 2020.[10]

---

[5]   *See generally* Ex. A, Plaintiff's Original Complaint in *Hurdsman I.*
[6]   *Id.* at 17–22.
[7]   *See* Ex. B, Order Appointing Counsel in *Hurdsman I.*
[8]   *See* Ex. C, Executed Release of All Claims and Indemnity Agreement.
[9]   *See* Ex. D, Joint Motion to Dismiss in *Hurdsman I.*
[10] *See* Ex. E, Dismissal Order in *Hurdsman I*; Ex. F., Final Judgment in *Hurdsman I.*

In relevant part, the Settlement Release states:

- "**WHEREAS**, Plaintiff/Appellee Rodney Hurdsman ('Hurdsman') was incarcerated in the Williamson County Jail ('WCJ') from April 28, 2015–July 7, 2017, and Hurdsman claimed [the County Defendants] violated Hurdsman's constitutional rights and committed other wrongs during his incarceration[.]"[11]

- "Hurdsman has agreed to accept, solely by way of compromise and settlement . . . said sum to be full settlement of all claims asserted or that could be asserted in the Litigation against the County and County Defendants, whether such clams have in fact been asserted[.]"[12]

- "That I, Rodney A. Hurdsman . . . for good and valuable consideration . . . do hereby **RELEASE, ACQUIT, QUITCLAIM** and **FOREVER DISCHARGE** Williamson County, any and all of its past, current, and future employees, agents, elected officials, officers, and any other representatives . . . from any and all claims . . . including but not limited to any claims under the Texas Tort Claims Act, and any claims made actionable by 42 U.S.C. § 1983."[13]

- "I intend this Release to be as broad and comprehensive as possible and to encompass any claims that I presently have or may acquire or discover in the future."[14]

- "It is my intention that the consideration stated herein shall be the full compensation for me for all injuries and damages, known and unknown, past and future, directly or indirectly resulting from or in any manner related to the above-described incarceration in the [Williamson County Jail] giving rise to the Litigation."[15]

- "It is my intention and I understand that, by this Release, I am not reserving any claims against any of the Released Parties [including the County Defendants], whether named or unnamed, arising out of the above-described incarceration in the WCJ giving rise to the Litigation."[16]

- "In consideration herein, I agree to make no further claim against any of the Released Parties [including the County Defendants] for any damages or injuries directly or indirectly sustained as a result of the above-described incarceration in the WCJ giving rise to the Litigation."[17]

- "I acknowledge that it is possible that I may subsequently discover, develop, or sustain damages or injuries of which I am not aware at this time, or which are not foreseeable or in existence at this time, and I acknowledge that this Release and Agreement are

---

[11] *See* Ex. C, Executed Release of All Claims and Indemnity Agreement at 1 (emphasis in original).
[12] *See id.*
[13] *See id.* at 2 (emphasis in original).
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

intended to extend to and cover such future damages or injuries which I may incur, develop, sustain, or discover."[18]

- "I further represent that my attorneys have explained the terms and effects of this Release and Agreement to me, and that understanding such terms, I desire to accept same and enter into this Release and Agreement."[19]

## B.    The Instant Action

After the dismissal of *Hurdsman I*, the County Defendants had no further communications or interactions with Hurdsman, until they were served with the instant action.  Just as in *Hurdsman I*, the causes of action in this lawsuit are based on Hurdsman's incarceration from April 28, 2015, to July 7, 2017 in the WCJ.

No scheduling order has been entered in this case yet.  Therefore, the County Defendants timely file this Motion for Summary Judgment.

### V.    ARGUMENTS & AUTHORITIES

## A.    Summary Judgment is Appropriate Because There are No Genuine Issues of Material Fact

Pursuant to Federal Rule of Civil Procedure 56(c), the Court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  "A dispute regarding a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Mendoza-Gomez v. Union Pac. R.R.*, No. 21-20397, 2022 WL 1117698, at *2 (5th Cir. Apr. 14, 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  There is no genuine issue of material fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for a non-moving party[.]" *Leonard v. Dixie Well Serv. & Supply, Inc*., 828 F.2d 291, 293–94 (5th Cir. 1987).

---

[18] *Id.* at 3 (emphasis in original).
[19] *Id.*

Once the moving party meets its burden, the party opposing summary judgment must designate specific facts showing that there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Conclusory assertions, unsupported by specific facts presented in admissible evidence, are insufficient to defeat summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990). Mere denials in pleadings are also insufficient to oppose summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

**B.      The Court Should Enforce the Plain Language of the Settlement Release**

The interpretation of an unambiguous settlement agreement is a question of law. "The applicable rule of contract construction is that unambiguous language in a contract should be enforced as written, and objective intent rather than subjective intent controls." *Shelton v. Exxon Corp*., 921 F.2d 595, 602–03 (5th Cir. 1991) (citing *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981)); *see also Commc'ns Transmission, Inc. v. TriStar Commc'ns, Inc.*, 798 F. Supp. 406, 407 (W.D. Tex. 1992); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law.").

"If a written instrument is worded so that a court may properly give it a definite legal meaning or interpretation, the instrument is not ambiguous." *Pace Concerts, Inc. v. Smith*, 990 F.2d 626, 1993 WL 117811, at *2 (5th Cir. 1993) (unpublished) (citing *Childers v. Pumping Sys., Inc.*, 968 F.2d 565, 569 (5th Cir. 1992)). "A contract is ambiguous only when the applicable rules of contract interpretation leave a genuine uncertainty as to which of two meanings is the proper meaning." *Id.* "A contract is not ambiguous merely because the parties disagree upon the correct interpretation or upon whether it

is reasonably open to just one interpretation." *Id.* "Mere disagreements of the parties as to the meaning of contract terms do not transform the issue of law into an issue of fact." *Id.* (agreeing with district court that contract was unambiguous despite defendant's claims to contrary).

Here, there is no question that the Settlement Release is unambiguous. The Settlement Release uses plain language for the benefit of all Parties. The terms of the Settlement Release were negotiated by sophisticated counsel for all Parties. Furthermore, Hurdsman himself averred that his counsel explained the terms of the Settlement Release to him, he understood terms, and willingly accepted the terms.[20] Accordingly, the Court need not look further than the four (4) corners of the Settlement Release. *Shelton*, 921 F.2d at 602.

## C.    The Settlement Release Applies to Hurdsman's Causes of Action Here

From the plain language of the Settlement Release, there can be no doubt that it encompasses Hurdsman's causes of action against the County Defendants in this second lawsuit. First, the Settlement Release includes any claims that could be raised against the County or Sheriff Gleason. The County, Sheriff Gleason, and "any and all of [the County's] past, current, future employees, agents, elected officials, officers, and any other representatives" are specifically included as "Released Parties."[21]

Second, the Settlement Release applies to all of the federal and state causes of action asserted by Hurdsman here. The Settlement Release is a broad, general release relating to any claims based on his incarceration in the WCJ.[22] It covers "any and all claims . . . and causes of action of any type, kind and character, statutory, equitable, or at common law . . . including, but not limited to . . .any other tort

---

[20] *Id.*

[21] *Id.* at 2.

[22] Nothing in Texas law forbids a "broad-form release." *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000). The parties are not required to "anticipate and identify each potential cause of action relating to the release's subject matter." *Id.* (finding broad release was sufficient to forgive all claims attributable to legal services rendered during defined time period).

or intentional tort, and any other claim arising under the United States and Texas Constitutions, and any other constitution, statute, or common law, including but not limited to any claims under the Texas Tort Claims Act, and any claims made actionable by 42 U.S.C. § 1983."[23]

Third, the Settlement Release also encompasses his unknown and/or later-discovered claims that are asserted here. The language of the Settlement Release itself plainly illustrates that Hurdsman intended to release unknown and/or later-discovered claims "in any manner related to" his incarceration in the WCJ.[24] The Settlement Release makes at least six (6) references to releasing such claims. For example, the Settlement Release states that it applies to "all claims asserted **or that could be asserted in the Litigation against the County and County Defendants, whether such claims have in fact been asserted** . . . ."[25] The Settlement Release also declares that it was intended to be "as broad and comprehensive as possible and to encompass any claims that [Hurdsman] presently [has] or may acquire or discover in the future" and that the consideration given for the release of claims "shall be the full compensation for [Hurdsman] for all injuries and damages, known and unknown, past and future, directly or indirectly resulting from or in any manner related to the above-described incarceration in the WCJ giving rise to the Litigation."[26] Based on the plain language of the Settlement Release, Hurdsman knowingly and unequivocally released all of his future, unknown, and later-discovered claims against the County Defendants.

It is axiomatic under Texas law that "[a] release, valid on its face . . . **is a complete bar to any later action** based on the matters covered by the release." *McGinnis v. Star Enter.*, 8 F.3d 20, 1993 WL 455587, at *3 (5th Cir. 1993) (unpublished) (citing *Deer Creek, Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198, 201 (Tex. App.—Dallas 1990, no writ) (emphasis added) (holding that release which

---

[23] *See* Ex. C, Executed Release of All Claims and Indemnity Agreement at 2.
[24] *Id.*
[25] *Id.* at 1 (emphasis added).
[26] *Id.* at 1–2.

covered "all claims" barred plaintiffs' subsequent lawsuit); *see also White v. Grinfas*, 809 F.2d 1157, 1160 (5th Cir. 1987) ("[S]ettlement agreements and releases are a complete bar to any later action based on matters included therein."). By its own terms, the Settlement Release from *Hurdsman I* applies to the instant action, requiring dismissal.

## C.       Releases Covering Unknown and Later-Discovered Claims are Enforceable

Lastly, and most importantly, case law in this Circuit demonstrates that releases including unknown and later-discovered claims are valid and enforceable. For example, in *Southmark Corp. v. F.D.I.C.*, the Fifth Circuit held "a general release that is not limited to a specific cause of action or occurrence, and broadly releases all claims and causes of action between two parties, is valid and enforceable." 142 F.3d 1279, 1998 WL 22453, at *4 (5th Cir. 1998) (unpublished) (enforcing release against later-asserted claims where released language included covered "any and all . . . claims . . . whether known or unknown, which each party owns or holds, or at any time heretofore owned or held by reason of any act, matter, cause whatsoever"). In *Southmark*, the release at issue was determined to be "broad and not limited to a specific transaction or cause of action." *Id*. Therefore, the release was held to be enforceable against later asserted claims between the same parties. *Id*.

By way of further example, in *Ingram*, the Fifth Circuit recognized that it must enforce a release that discharged all known, unknown, "past, present, or future" claims. *Ingram Corp. v. J. Ray McDermott & Co., Inc.*, 698 F.2d 1295, 1312 (5th Cir. 1983). The *Ingram* Court further held that whether a party contemplated that it may have additional claims at the time of signing the release is immaterial to the validity and applicability of the release where the release language specifically includes unknown claims:

> Thus, Ingram cannot escape the validity of the releases by merely asserting ignorance of its antitrust claim. Indeed, it may be unaware of many claims existing in its favor. **When a release provides that "any and all claims," "past, present, or future" are to be extinguished, a court is required to enforce its provisions both as to known and unknown claims**.

*Id.* (emphasis added); *see also Shelton*, 921 F.2d at 602 (holding that release barred plaintiff's later-filed imprudent-marketing claim, despite plaintiff's argument that he was ignorant of having such a claim when he entered into the release, where the release covered "any and all claims, causes of action and liabilities"); *Martin v. Brown Schools Educ. Corp.*, No. 3:02-cv-0144G, 2003 WL 21077454, at *6 (N.D. Tex. 2003) (holding that release which covered "any and all of [plaintiff's] claims, known or unknown, arising out of or related to [her] employment" barred her later-filed employment claims); *Shackleford v. St. Michael Healthcare Ctr.*, 205 F.3d 1338, 1999 WL 1338422 (5th Cir. 1999) (per curiam) (unpublished) (affirming summary judgment and holding that settlement agreement arising after slip-and-fall accident, which released "all claims, known or unknown, present or future," barred plaintiff's later-discovered medical malpractice claim).   The Circuit's history of enforcing broad settlement agreements against future or later-discovered claims is unquestionable.

The Settlement Release contains similar, if not the same, language that was enforced by the counts in *Southmark*, *Ingram*, *Shelton*, and *Martin* to bar a party's subsequent litigation of unknown or later-discovered claims.   Here, the language of the Settlement Release specifically references "any claims that [Hurdsman] presently [has] *or* **may acquire or discover in the future**" and that the consideration given for the release of claims "shall be the full compensation for [Hurdsman] for all injuries and damages, **known and unknown, past and future**, directly or indirectly resulting from or in any manner related to [Hurdsman's] incarceration in the [WCJ] giving rise to the Litigation."[27]

Just as with *Ingram* and *Shelton*, Hurdsman's allegations that he did not discover his alleged claims based on his phone calls in the WCJ until 2021—after entering into the Settlement Release—are inconsequential.[28]   He had already, knowingly and intentionally, released any claims he could have possibly raised against the County Defendants.   The broadly-worded Settlement Release was intended

---

[27] *Id.* (emphasis added).
[28] Pl.'s Am. Compl., at ¶ 44.

to "buy complete peace" between the County Defendants and Hurdsman, and the County Defendants are entitled to have the Court enforce that peace.  *See Shelton*, 921 F2d at 602 ("We are persuaded that the language of the 1980 settlement agreement unambiguously and broadly released 'any and all claims, causes of action and liabilities' . . . . As we see it, the very purpose of such a broadly worded release is to avoid the risk of encountering such interpretive principals as *ejusdem generis* by enumerating claims to be released at least when the parties were buying complete peace."). Consequently, because the Settlement Release explicitly references all known and unknown claims Hurdsman may have against the County Defendants, the Settlement Release serves as complete bar to the causes of action that Hurdsman has raised here against the County Defendants.  Therefore, the County Defendants are entitled to summary judgment as a matter of law.

## VI.   Conclusion and Prayer

For the foregoing reasons, Hurdsman's claims against the County Defendants are barred as a matter of law and summary judgment is appropriate.  Defendants **Sheriff Mike Gleason** and **Williamson County, Texas** pray that their Motion for Summary Judgment be granted, that Hurdsman's claims be dismissed with prejudice, that costs be awarded to the County Defendants, and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

_____

**Larry J. Simmons – Attorney-in-Charge**
State Bar No. 00789628
ljsimmons@germer.com
**Carmen Jo Rejda-Ponce – Of Counsel**
State Bar No. 24079149
Federal I.D. No. 1366666
crejdaponce@germer.com
**GERMER PLLC**
America Tower
2929 Allen Parkway, Suite 2900
Houston, Texas 77019
(713) 650-1313 – Telephone
(713) 739-7420 – Facsimile

**COUNSEL FOR DEFENDANTS,**
**MICHAEL GLEASON AND**
**WILLIAMSON COUNTY, TEXAS**

## CERTIFICATE OF SERVICE

I certify that on the 1st day of August, 2022, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing, and served via certified mail, return receipt requested, and U.S. First Class Mail, on Plaintiff as follows:

Rodney A. Hurdsman # 02170782
Texas Department of Criminal Justice
Robertson Unit
12071 F.M. 3522
Abilene, Texas 79601

_____

**Carmen Jo Rejda-Ponce**