**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **RODNEY A. HURDSMAN,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **A-22-CV-254-RP** |
| | § | |
| **SHERIFF MIKE GLEASON,** | § | |
| **WILLIAMSON COUNTY, and INMATE** | § | |
| **CALLING SOLUTIONS,** | § | |
| **DEFENDANTS.** | § | |

## ORDER

Before the Court are Plaintiff Rodney A. Hurdsman's Amended Complaint brought pursuant to 42 U.S.C. § 1983 (ECF No. 17); Defendants Sheriff Mike Gleason and Williamson County's (the County Defendants) Motion for Summary Judgment (ECF No. 26); Hurdsman's response thereto (ECF No. 30); the County Defendants' reply (ECF No. 31); and Defendant Inmate Calling Solutions's (ICS) Motion to Dismiss (ECF No. 29). The County Defendants have also filed an Opposed Motion for Protective Order and Motion for Stay (ECF No. 23), which Hurdsman opposes (ECF No. 27). Hurdsman is proceeding *pro se* and *in forma pauperis*. After consideration of the above-referenced pleadings, the Court denies the County Defendants' Motion for Summary Judgment and Opposed Motion for Protective Order and grants in part and denies in part ICS's Motion to Dismiss.

## I. Factual Background

Hurdsman is currently confined in the Robertson Unit of the Texas Department of Criminal Justice--Correctional Institutions Division. In his amended complaint, Hurdsman states he was confined in the Williamson County Correctional Facility (WCCF) from April 27, 2015, to July 7, 2017. During his incarceration at WCCF, Hurdsman alleges he made numerous phone

calls, including calls to his criminal defense attorneys regarding his criminal cases in various jurisdictions. Hurdsman alleges that, despite the privileged nature of his calls to his attorneys, ICS recorded and stored them. Hurdsman further complains these recordings were provided to law enforcement officers and prosecuting criminal attorneys. Hurdsman states he first learned his confidential conversations had been recorded and shared with third parties in early 2021, when one of his criminal defense attorneys gave him a digitally stored bank of previously recorded phone calls.

Hurdsman claims the County Defendants and ICS violated his First Amendment right to freedom of speech and association to privately consult with his attorneys. He further claims the defendants violated his Fourth Amendment rights by illegally searching and seizing his privileged phone calls; his Sixth Amendment right to effective assistance of counsel by interfering with his confidential attorney-client phone calls; and his Fourteenth Amendment rights by providing the recordings of his privileged phone calls to law enforcement officers and prosecutors. Finally, Hurdsman raises state and federal claims for wiretapping pursuant to section 16.02(b) of the Texas Penal Code and 18 U.S.C. § 2511(a), as well as state law claims of invasion of privacy and unlawful concealment.

The County Defendants move for summary judgment, arguing the settlement agreement from a previous lawsuit Hurdsman brought against them contains a valid settlement release that releases them from any claims related to Hurdsman's incarceration in the WCCF from April 28, 2015 to July 7, 2017. Defendants contend that, by entering into the settlement agreement and release, Hurdsman agreed to accept money as "the full compensation for [him] for all injuries and damages, known and unknown, past and future, directly or indirectly resulting from or in any matter related to the above-described incarceration in the [WCCF] giving rise to the Litigation."

The County Defendants argue that, pursuant to the settlement agreement and release, all of Hurdsman's current claims against them are barred as a matter of law.

In response, Hurdsman argues (1) private settlement agreements are not enforceable in federal court, (2) Williamson County indemnified ICS within the parties' contract, (3) the County Defendants fraudulently and illegally concealed their actions, and the complained-of acts in the current case are unrelated to the prior litigation, and (4) the County Defendants are concealing information concerning the alleged recordings and distribution of Hurdsman's privileged conversations.

ICS moves to dismiss Hurdsman's claims arguing (1) ICS is not a state actor and therefore not subject to liability under § 1983, (2) Hurdsman fails to state a claim against ICS for violations of his First, Fourth, Sixth, and Fourteenth Amendment rights, (3) Hurdsman fails to state a claim for violation of state and federal wiretapping statutes, and (4) Hurdsman fails to assert any state law claim against ICS. (ECF No. 29). Hurdsman has not responded.

## **II. Analysis**

### 1. Motion for Summary Judgment

The County Defendants move for summary judgment, arguing the settlement release from the prior litigation is a complete defense to Hurdsman's claims in the instant lawsuit. "Summary judgment must be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017) (quoting FED. R. CIV. P. 56(a)). The court views the facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. *Hanks* v. *Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009)).

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party cannot rely on general allegations but must produce "specific facts" showing a genuine issue for trial. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

The summary judgment record shows the following. On April 3, 2017, Hurdsman filed a complaint in this Court pursuant to § 1983, naming the County Defendants (along with fifteen other defendants); Hurdsman claimed the defendants had violated his constitutional rights during his pretrial detention in the WCCF. *Hurdsman v. Pokluda*, No. 1:17-cv-290-RP (W.D. Tex.) (*Hurdsman I*). After this Court denied the defendants' motion for summary judgment, the parties entered settlement negotiations and eventually signed a settlement agreement on August 26, 2020. The settlement agreement contains the follow release:

**RELEASE**

**NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS**: That I, Rodney A. Hurdsman, on behalf of myself and my heirs, . . . for good and valuable consideration, including the total sum of **EIGHTY-THREE THOUSAND AND FIVE HUNDRED Dollars & 00/100 ($83,500.00)**, do hereby **RELEASE, ACQUIT, QUITCLAIM** and **FOREVER DISCHARGE** Williamson County, any and all of its past, current, and future employees, agents, elected officials, officers, and any other representatives, . . . from any and all claims, demands, liens, charges, debts, judgments, costs, rights and causes of action of any type, kind and character, statutory, equitable or at common law, arising directly or indirectly from or by reason of the above-described incident. . .

I intend this Release to be as broad and comprehensive as possible and to encompass any claims that I presently have or may acquire or discover in the future. . . .

. . . .

In entering into this compromise and Agreement, I acknowledge . . . that it is possible that I may subsequently discover, develop, or sustain damages or injuries of which I am not aware at this time, or which are not foreseeable or in existence at this time, and I acknowledge that this Release and Agreement are intended to extend to and cover such future damages or injuries which I may incur, develop, sustain, or discover.

(ECF No. 26-3 at 3-4.)

The County Defendants argue the Court should enforce the settlement release and dismiss Hurdsman's current complaint against them. They argue the settlement release covers unknown and later-discovered claims, such as the federal and state causes of action asserted in Hurdsman's current complaint, and that such clauses in settlement agreements are enforceable. (ECF No. 26.) In response, Hurdsman argues the Court should not grant the County Defendants' summary judgment motion to enforce the settlement agreement from *Hurdsman I* because, *inter alia*, private settlement agreements are not enforceable in federal court under 18 U.S.C. § 3626(c)(2). (ECF No. 30.)

The Prison Litigation Reform Act (PLRA), as codified in 18 U.S.C. § 3626, provides limitations on the appropriate remedies parties can fashion with respect to litigation over prison conditions. The statute is primarily focused on the granting of prospective relief and preliminary injunctive relief, and states that such relief cannot be granted unless it is "narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1), (2). In terms of settlements, the statute distinguishes between consent decrees and private settlement agreements. A consent decree is "any relief entered by the court that is based in whole

or in part upon the consent or acquiescence of the parties but does not include private settlements." 18 U.S.C. § 3626(g)(1). A private settlement agreement is "an agreement entered into among parties that is not subject to judicial enforcement other than the reinstatement of the civil proceeding the agreement settled." 18 U.S.C. § 3626(g)(6). While a court cannot approve a consent decree unless it complies with the statute's limitations on prospective relief and preliminary injunctions, "[n]othing in this section shall preclude parties from entering into a private settlement agreement that does not comply with the limitations on relief set forth in subsection (a), if the terms of that agreement are not subject to court enforcement other than the reinstatement of the civil proceeding that the agreement settled." 18 U.S.C. § 3626(c)(2)(A). If one of the parties breaches the private settlement agreement, "[n]othing in this section shall preclude any party . . . from seeking in State court any remedy available under State law." 18 U.S.C. §3626(c)(2)(B).

Several circuits have concluded that, under the PLRA, private settlement agreements are not judicially enforceable. *See Rowe v. Jones*, 483 F.3d 791, 796 (11th Cir. 2007) (plain language of PLRA shows private settlement agreements are not subject to judicial enforcement; legislative history supports this interpretation by stating "[p]arties may continue to enter such [private settlement] agreements to avoid lengthy and burdensome litigation, but they cannot expect to rely on the court to enforce the agreement."); *Benjamin v. Jacobsen*, 172 F.3d 144, 157 (2d Cir. 1999) (en banc) (noting that § 3626(g)(1) defines a consent decree as "entered by the court" whereas private settlement agreements are defined as not subject to judicial enforcement; concluding Congress made the "concepts of consent decrees and private settlement agreements mutually exclusive") *accord Hazen ex rel. LeGear v. Reagen*, 208 F.3d 697, 699 (8th Cir. 2000); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S.

6

598, 604 n.4 (2001) ("[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal.")

In support of their argument that private settlement agreements are binding and enforceable, the County Defendants rely on an unpublished Fifth Circuit opinion and an unpublished order from the Northern District of Texas. However, these cases are unpersuasive because both involve settlement agreements within the same lawsuit where the plaintiffs attempted to walk back on their agreements. *See Scott v. Livingston*, 628 F. App'x 900, 903 (5th Cir. 2015) (unpublished per curiam) (finding that, under Texas law, plaintiff entered into a binding settlement agreement with TDCJ and thus district court erred in not dismissing plaintiff's case based on that agreement); *Dennis v. Martin*, No. 2:15-cv-0330-Z-BR, 2021 WL 6753533 (N.D. Tex. Dec. 10, 2021) (concluding that, under Texas law, parties had entered into a binding settlement agreement and recommending plaintiff's claims be dismissed as moot following settlement), *report and recommendation adopted* 2022 WL 271745 (N.D. Tex. Jan. 28, 2022).

In a footnote, the County Defendants argue that, under certain circumstances, parties can bring a breach-of-contract action in federal court. Again, however, the case they rely on is unpersuasive. In the order dismissing the lawsuit pursuant to the settlement agreement, the court in the case they reply on stated "'this Court shall retain jurisdiction over the Confidential [A]greement, in the event of a dispute concerning that agreement, to interpret and enforce the agreement, if necessary.'" *Nat'l Oilwell Varco, L.P. v. Auto-Dril, Inc.*, No. 5:15-cv-00027-RWS, 2018 WL 11351323, at *2 (E.D. Tex. Dec. 14, 2018). This Court entered no such language in its

dismissal order from *Hurdsman I*. Rather, it entered judgment pursuant to Federal Rule of Civil Procedure 58, ordered the case closed, and ordered each party to bear their own costs and fees. *See* Final Judgment, ECF No. 121, *Hurdsman v. Pokluda*, No. 1:17-cv-290-RP (W.D. Tex. Oct. 13, 2020).

The settlement agreement and release are clear: in exchange for compensation, Hurdsman agreed to release the County Defendants from any and all state and federal claims based on his incarceration in WCCF. However, the PLRA is also clear: a party seeking to enforce a settlement agreement can do so only by reinstating the civil suit the private agreement settled or by seeking any state law remedy available in state court. Accordingly, the Court cannot enforce the settlement agreement from *Hurdsman I* by dismissing Hurdsman's claims in this new litigation. The County Defendants' Motion for Summary Judgment is therefore denied.

2. ICS's Motion to Dismiss

Defendant ICS moves separately to dismiss Hurdsman's complaint for failure to state a claim upon which relief can be granted. ICS argues that it is not a state actor and therefore, under § 1983, Hurdsman's claims fail as a matter of law. ICS further argues that, even if the Court were to conclude it was a state actor, Hurdsman has failed to state a claim for a violation of his constitutional rights, a violation of state and federal wiretapping statutes, and has failed to assert any state law claims against ICS.

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. FED. R. CIV. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), a court will accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679. Further, a plaintiff's factual allegations must establish more than just the "sheer possibility" a defendant has acted unlawfully. *Id.*; *Twombly*, 550 U.S. at 555 (factual allegations must be enough to raise a right to relief above the speculative level) (citation omitted). Determining a complaint's plausibility is a "context-specific task," but if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct" the complaint has failed to meet the pleading standard under Rule 8(a)(2). *Iqbal*, 566 U.S. at 678.

*a. State Actor*

ICS first argues it is not a state actor, and therefore cannot be held liable under § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). ICS argues that its actions were not committed under the color of state law.

The Supreme Court has utilized several tests to determine whether a private entity is acting under color of state law. *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549-50 (5th Cir. 2005). The "public function test" examines whether the private entity is performing a function

9

traditionally reserved for the State. *Id*. at 549. The "state compulsion test" asks whether the private entity's actions are attributable to the State because the State exerts coercive power over the private entity or provides significant encouragement. *Id.* at 549-50. The "nexus" or "state action test" looks at whether the State has put "'itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise.'" *Id*. at 550 (quoting *Jackson v. Metro Edison Co.*, 419 U.S. 345, 357-58 (1974)). Finally, under the "joint action test," the private entity will be considered a state actor if it willfully participated in joint action with the State. *Id*.

In his amended complaint, Hurdsman alleges that ICS is the inmate telephone services provider at WCCF. During his incarceration at WCCF from April 27, 2015, to July 7, 2017, Hurdsman made a "multitude" of telephone calls to his criminal defense attorneys regarding his pending criminal cases. Prior to making these phone calls, he alerted "WCCF officers, deputies, administrators, Defendant Mike Gleason"—both verbally and in writing—that certain phone numbers he was going to call should be designated private attorney calls. He further alerted the same persons that these calls were confidential attorney-client phone calls and should not be recorded or stored. Hurdsman alleges Defendant Gleason and the other WCCF parties acknowledged and agreed to his request. Despite this assurance, Hurdsman alleges ICS and the County Defendants "listened to, recorded and stored on their computer servers [the privileged attorney-client] telephone calls . . . then provided said telephone calls and conversations between Hurdsman and his attorneys to law enforcement officers and agents, and to the United States Attorney's office and its attorneys and agents." (ECF No. 17 at 8.)

ICS argues Hurdsman's claims are conclusory; that the provision of telephone services for inmates in county jail does not "in and of itself" transform a provider of telephone services

10

into a state actor; and that Hurdsman does not allege anyone informed ICS about his privileged phone calls or that ICS acted together with the County Defendants to monitor, record, and distribute the attorney-client phone calls. (ECF No. 29 at 6-8.)

At this stage of the litigation, the Court concludes Hurdsman's allegations suffice to meet the joint action test. Hurdsman makes specific factual allegations that ICS went beyond providing telephone services to WCCF inmates by recording privileged phone calls and then distributing these recordings to law enforcement officers and agents. While Hurdsman does not specifically allege ICS acted in concert with WCCF officers and employees to distribute the privileged phone calls, it is clear from his allegations that either ICS acted in concert with or at the behest of WCCF administrators and employees when recording and distributing these phone calls. *See Hobbs v. Hawkins*, 968 F.2d 471, 480 (5th Cir. 1992) (alleging conspiracy between private and public actors satisfies joint action test). Based on Hurdsman's allegations, it appears ICS and the County Defendants willfully participated in the decision to monitor confidential attorney-client telephone calls. *See Cornish*, 402 F.3d at 549-51 (joint action test requires complaint contain factual allegations that county and private entity were willful or joint participants in unconstitutional act).

### b. First Amendment claim: freedom of speech

ICS next argues Hurdsman's claim alleging a violation of the First Amendment fails to state a claim because Hurdsman does not allege that the recording of his privileged conversations inhibited his ability to speak freely with his attorney. Rather, ICS argues that, because Hurdsman did not learn of the alleged recordings until early 2021, his conversations with his attorneys between 2015-2017 could not have been chilled by the activity.

It is well established that a prison inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78, 95 (1987) (same); *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (same). Although the Court can find no Fifth Circuit precedent for the precise facts of this case, the Fifth Circuit has held that "interference [with a prisoner's legal mail] may violate the prisoner's First Amendment right to free speech—i.e., the right to be free from unjustified governmental interference with communication." *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Hurdsman alleges ICS and WCCF staff monitored, recorded, and distributed his privileged communications regarding his pending criminal cases to local law enforcement officers. Although Hurdsman was not aware of this monitoring at the time it occurred, ICS does not point to any case law supporting its argument that Hurdsman had to be aware of the monitoring for it to have violated his First Amendment rights. *See, e.g., Jones v. Brown*, 461 F.3d 454, 359 (3d. Cir. 2006) (state prison's "pattern and practice" of opening attorney mail outside the presence of inmate "interferes with protected communications, strips those protected communications of their confidentiality," and "impinges upon the inmate's right to freedom of speech") *accord Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008). Accordingly, the Court concludes Hurdsman has stated a claim for a violation of his First Amendment right to freedom of speech.[1]

*c. Fourth Amendment claim*

ICS argues that Hurdsman's claim based on a violation of his Fourth Amendment rights also fails to state a claim upon which relief can be granted because his allegations are conclusory

---

[1] Hurdsman also claims a violation of his First Amendment right to freedom of association, however, because ICS does not move to dismiss this claim, the Court has not addressed it.

and contain no factual support. In claiming a violation of his Fourth Amendment rights, Hurdsman states as follows:

> Each named Defendant violated the Plaintiffs' guaranteed rights afforded to them pursuant to the Fourth Amendment to the United States Constitution. Specifically, the Defendants illegally search[ed] and seized the Plaintiffs' attorney-client privileged, confidential and private, phone calls and conversations of which they had a reasonable expectation of privacy and which were not lost simply because they took place at WCCF utilizing the inmate telephone system.

(ECF No. 17 at 13.)

The Fourth Amendment protects individuals "against unreasonable searches and seizures" conducted by government officials. U.S. CONST. amend. IV. "'The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 211-12 (5th Cir. 2001) (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)). The government cannot monitor or record a call without violating the Fourth Amendment if the parties have a reasonable expectation of privacy in their conversation. *Katz v. United States*, 389 U.S. 347, 351-52 (1967). To state a claim under the Fourth Amendment, a plaintiff must show he had an actual expectation of privacy, and that his expectation is one that society recognizes as reasonable. *See Zaffuto v. City of Hammond*, 308 F.3d 485, 488 (5th Cir. 2002) (citing *Katz*, 389 U.S. at 351-52.)

Hurdsman alleges he provided WCCF administration and staff, both orally and in writing, with the phone numbers of his criminal defense he would be calling, and they assured him the phone calls would not be monitored or recorded. He further alleges ICS "listened to, recorded and stored on their computer servers" the telephone calls he made to his criminal defense attorneys and then provided those phone calls to law enforcement officers and prosecutors. Both attorneys and clients have an objectively reasonable expectation of privacy in confidential communications between them. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981) (attorney-

client privilege is the "oldest of the privileges for confidential communications known to the common law"). Accordingly, based on the facts alleged in Hurdsman's complaint, the Court concludes he has stated a claim for a violation of the Fourth Amendment. *See, e.g., Gennusa v. Shoar*, 748 F.3d 1103, 1110-12 (11th Cir. 2014) (local criminal defense attorney and client had reasonable expectation of privacy when communicating with pretrial detainee client in interrogation room when officials led attorney to believe conversations would not be monitored).

*d. Sixth Amendment claim*

Hurdsman claims ICS violated his Sixth Amendment right to counsel by recording and distributing his privileged phone calls which negatively affected the disposition of his pending criminal charges. ICS argues that Hurdsman's allegations fail to state a claim under the Sixth Amendment because "'interference with the attorney client relationship' is not a legal interest provided by the Sixth Amendment." (ECF No. 29 at 10.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI. "A governmental intrusion 'through surreptitious electronic means or through an informant' upon 'the confidential relationship between a criminal defendant and his attorney' violates the Sixth Amendment right to counsel. *United States v. Diaz*, 941 F.3d 729, 738 (5th Cir. 2019) (quoting *United States v. Zarzour*, 432 F.2d 1, 3 (5th Cir. 1970)). The right only protects against government intrusion in the attorney-client relationship in a criminal setting, *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974), and attaches when prosecution is commenced, *see Rothgery v. Gillespie Cnty., Tex.,* 554 U.S. 191, 198 (2008). To prevail on a claim that the state actor intruded on privileged attorney-client communications, the plaintiff must show prejudice. *See Diaz*, 941 F.3d at 739. Hurdsman alleges ICS intruded on his attorney-client conversations by

recording and distributing them and that he was harmed and prejudiced as a result. At this stage of this litigation, this suffices to state a claim for a violation of his Sixth Amendment right to counsel.

### e. Fourteenth Amendment claim

Hurdsman claims ICS violated his Fourteenth Amendment right to access the courts by monitoring, recording, and distributing his privileged phone calls, thereby giving law enforcement officers and prosecutors an unfair advantage to impair his defenses in his criminal proceedings. ICS argues Hurdsman's claim fails as a matter of law because "[i]t is unclear how the alleged interception of attorney-client communications and the subsequent provision of those communications to 'law enforcement and prosecutors' prevented [Hurdsman] from accessing the court system or . . . fairly presenting his claim to a court of law." (ECF No. 29 at 12.) ICS also argues Hurdsman fails to provide facts as to how he was prejudiced or harmed by the alleged conduct of recording his privileged communications and sending them to prosecutors.

Detainees have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010). Access-to-courts claims fall into two categories: "forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing or filing suits at the present time,' and backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to see some particular order of relief.'" *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002)). To state a claim based on backward-looking access-to-courts, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not

otherwise available in another suit that may yet be brought. *United States v. McRae*, 702 F.3d 806, 830-31 (5th Cir. 2012) (citing *Christopher*, 536 U.S. at 415).

Hurdsman's access-to-courts claim fails on two fronts: first, he fails to identify a non-frivolous underlying claim and, second, he fails to identify a remedy that is not otherwise available in some suit that may yet be brought. Hurdsman alleges that law enforcement officers and prosecutors were able to use his privileged phone calls to "impede certain defenses of those law enforcement investigations and pending criminal charges, which ultimately severely prejudiced and harmed the Plaintiffs and the final outcome and disposition of those criminal investigations and pending criminal charges." (ECF No. 17 at 14.) It appears, therefore, that the underlying claim would be a defense or legal strategy in one of his criminal cases, but he fails to identify which case or which strategy.

Further, the Court has already concluded that Hurdsman stated a claim for other constitutional violations, and thus there are other remedies available to him. *See Christopher*, 536 U.S. at 415 ("There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.") Because Hurdsman's complaint does not identify a non-frivolous underlying claim and he is able to state a claim based for constitutional violations based on the same allegations, his access-to-courts claim fails as a matter of law.

### f. Federal and State Wiretapping Claims

Hurdsman alleges ICS violated the Electronic Communications Privacy Act of 1986, 18 U.S.C § 2511, and the Texas Criminal Wiretap Act, TEX. PENAL CODE ANN. § 16.02(b)(1), (3). ICS argues Hurdsman's claims fail because (1) he does not assert facts establishing ICS knew or should have known the interception of his confidential phone calls was prohibited; (2) he does

not allege ICS intentionally intercepted the phone calls; (3) the routine recording of inmate phone calls in detention facilities is an exception to the wiretap act; and (4) he provides no facts establishing ICS intentionally recorded the privileged phone calls and distributed them to third parties.

*i. Electronic Communications Privacy Act (ECPA)*

The ECPA generally prohibits the intentional interception, use, or disclosure of telephone communications without at least one communicating party's consent. 18 U.S.C. § 2511. The Act authorizes the recovery of civil damages to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a). Hurdsman does not specify which sections of the ECPA ICS violated, but the Act prohibits the intentional interception of any wire, oral, or electronic communication, as well as the intentional disclosure to "any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(a), (c).

ICS first argues that Hurdsman's claim fails because he does not allege ICS knew his conversations were privileged and therefore fails to allege ICS intentionally intercepted or disclosed his confidential telephone communications. This is incorrect. Hurdsman alleges ICS "unlawfully intercepted, listened to, recorded, stored and/or provided to law enforcement officers and agents or prosecuting attorneys the Plaintiffs' attorney-client privileged, confidential and private telephone calls and conversations, without lawful authority or waiver and consent." (ECF No. 17 at 11.) While not rife with facts, at this early state of the litigation, these allegations are enough to state a claim for a violation of the ECPA.

ICS is correct that inmate phone calls are routinely recorded in correctional settings, and many circuits have held that such recordings are exempt from the ECPA under the law enforcement exception. *See, e.g.*, *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *United States v. Feekes*, 879 F.2d 1562, 1565-66 (7th Cir. 1989) *United States v. Paul*, 614 F.2d 115, 117 (6th Cir. 1980). However, there are two relevant differences here: first, ICS is not a law enforcement agency or officer; second, the recording of inmate phone calls differs from recording a pretrial detainee's privileged conversations with his criminal defense counsel and then disclosing those conversations to law enforcement and prosecutors. Thus, the law-enforcement exception does not apply to ICS.

### ii. Texas Wiretap Statute

Like the ECPA, the Texas wiretap statute prohibits the intentional interception of a wire, oral, or electronic communication, as well as the intentional disclosure to another person of the contentions of a wire, oral, or electronic communication if the person has reason to know the information was obtained in violation of the statute. TEX. PENAL CODE ANN. § 16.02(b)(1), (3). Texas also provides a private cause of action for any "person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of" certain statutes including Chapter 16 of the Penal Code. TEX. CODE. CRIM. PROC. ANN. art. 18A.502(1); *Taylor v. Tolbert,* 644 S.W.3d 637, 643 (Tex. 2022).

The language in the ECPA and the Texas wiretap statute are "virtually identical." *Alameda v. State*, 235 S.W. 3d 218, 225 (Tex. Crim. App. 2007) (Keller, J., concurring); *see also Siddiq v. State*, 502 S.W.3d 387, 394 (Tex. App--Ft. Worth, 2016, no pet.) (construing Texas wiretap statutory provisions in accordance with federal cases interpreting identical definitional provisions of the same statute). ICS does not differentiate between its arguments for dismissal

under the ECPA or the Texas wiretap statute. Accordingly, because this Court has concluded that Hurdsman stated a claim under the ECPA, it similarly concludes Hurdsman has stated a claim under the Texas wiretap statute.

### g. State law claims

Hurdsman brings claims pursuant to the Texas common law torts of invasion of privacy and unlawful concealment, based on the facts alleged in his amended complaint. ICS moves to dismiss these claims, arguing Hurdsman fails to identify a specific statute, rule of law, or theory of law under which he seeks recovery. ICS argues Hurdsman's claims do not meet the minimum pleading standard pursuant to *Twombly*, 550 U.S. at 555.

Under Texas law, invasion of privacy is an intentional tort. *See Doggett v. Travis Law Firm, P.C.*, 555 S.W.3d 127, 130 (Tex. App.--Houston [1st Dist.] 2018, pet. denied) (citing *Billings v. Atkinson*, 489 S.W.2d 858, 860-61 (Tex. 1973)). Texas courts recognize three types of invasion-of-privacy claims: (1) unreasonable intrusion upon seclusion, (2) public disclosure of private facts, and (3) appropriation of name and likeness. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994). Based on his allegations, the Court construes Hurdsman's complaint as raising a claim based on unreasonable intrusion upon seclusion.

To state a claim for intrusion upon seclusion, a plaintiff must allege that (1) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs or concerns; and (2) such intrusion would be highly offensive to a reasonable person. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). "Intrusions typically involve activities such as spying, opening private mail, wiretapping, or entering a person's residence." *Doe v. United States*, 83 F. Supp. 2d 833, 840 (S.D. Tex. 2000) (citing *Billings*, 489 S.W.2d at 860).

Hurdsman alleges ICS intentionally monitored, recorded, and then distributed his confidential conversations with his criminal defense attorney. The Court concludes that, accepting Hurdsman's allegations as true, this states a claim for invasion of privacy based on intrusion upon seclusion. *See Billings*, 489 S.W.2d at 860 (recognizing common law cause of action for invasion of privacy where telephone company employee installed wiretap device on customer's phone).

Hurdsman also claims ICS committed the tort of unlawful concealment. However, Hurdsman provides no case law showing such a tort exists under Texas state law and the Court is unable to locate one. Accordingly, because Hurdsman fails to show that unlawful concealment is a cognizable cause of action under Texas state law, this claim is dismissed for failure to state a claim upon which relief can be granted.

## C. The County Defendant's Motion for Protection

Finally, the County Defendants move for protection from responding to Hurdsman's discovery requests, arguing Sheriff Gleason asserted his entitlement to qualified immunity and that Hurdsman's complaint against them is barred by the *Hurdsman I* settlement agreement. (ECF No. 23.)

Regarding qualified immunity, the County Defendants argue that *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022) requires this Court to stay all discovery until it decides on Defendant Gleason's entitlement to qualified immunity. However, this case is not in the same procedural posture as *Carswell*. There, the defendants filed a motion to dismiss based on qualified immunity and the district court dismissed the motion without prejudice pursuant to the court's standard scheduling order. The Fifth Circuit held the district court erred in so doing, because "where the

pleadings are insufficient to overcome [qualified immunity], the district court *must* grant the motion to dismiss without the benefit of pre-dismissal discovery." *Carswell*, 54 F.4th at 312.

Here, defendant Gleason asserted the defense of qualified immunity in his answer to Hurdsman's amended complaint (ECF No. 14 at 12) but has not filed a motion to dismiss based on qualified immunity. Further, the County Defendants' motion for summary judgment focused on the settlement agreement from *Hurdsman I*; they did not move for summary judgment on the alternative basis of qualified immunity.

Accordingly, because the County Defendants have not filed a dispositive motion asserting qualified immunity and because the Court concludes the settlement agreement from *Hurdsman I* is not enforceable, the County Defendants' motion to stay discovery is denied.

### III. Conclusion

It is therefore **ORDERED** that the Motion for Summary Judgment, filed by Defendants Sheriff Mike Gleason and Williamson County (County Defendants) (ECF No. 26) is **DENIED**.

It is further **ORDERED** that the Motion to Dismiss filed by Defendant Inmate Calling Solutions (ICS) (ECF No. 29) is **GRANTED IN PART** and **DENIED IN PART**. ICS's Motion to Dismiss is **GRANTED** with regard to Hurdsman's claims based on access to courts and unlawful concealment. ICS's Motion to Dismiss is **DENIED** as to all other claims.

It is finally **ORDERED** that the County Defendants' Opposed Motion for Protective Order and Motion to Stay Discovery (ECF No. 23) is **DENIED**.

SIGNED this 21st day of March, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE