# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **RODNEY A. HURDSMAN,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. 1-22-CV-00254-RP** |
| | § | |
| **MIKE GLEASON, SHERIFF,** | § | |
| **WILLIAMSON COUNTY;** | § | |
| **WILLIAMSON COUNTY, TEXAS,** | § | |
| **INMATE CALLING SOLUTIONS,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Mike Gleason's Motion for Judgment on the

Pleadings, Dkt. 55; and all related briefing. After reviewing these filings and the

relevant case law, the undersigned recommends that the District Court grant in part

and deny in part Gleason's motion.

## I.      BACKGROUND

Plaintiff Rodney Hurdsman brings this case pursuant to 28 U.S.C. § 1983

alleging violations of his rights under the First, Fourth, Sixth, and Fourteenth

Amendments related to alleged recording of privileged phone calls between

Hurdsman and his attorney while Hurdsman was a pretrial inmate at the Williamson

County Correctional Facility ("WCCF"). Dkt. 17, at 8-9. These recordings were

allegedly transmitted to law enforcement officers and state and federal attorneys

1

prosecuting Hurdsman. *Id.* Hurdsman brings his claims against Gleason, who was the Chief of the WCCF while Hurdsman was incarcerated there and is now the current Sheriff of Williamson County, Texas; Willamson County which operates the WCCF; and Inmate Calling Solutions, WCCF's telephone service provider. *Id.* at 3-4.

Hurdsman also brings a claim under *Monell* v. *Department of Social Services of the City of New York,* 436 U.S. 658 (1978), for Defendants' alleged policy of recording and storing inmates' privileged phone calls and transmitting them to state and federal officers and agents and prosecuting attorneys without lawful consent or authority. *Id.* at 1. Hurdsman alleges that Defendants also violated the Federal Wiretap Act 18 U.S.C. § 2511(1) and §16.02(b) of the Texas Penal Code governing the unlawful interception, use, or disclosure of wire, oral, or electronic communications. *Id.* at 2. Hurdsman's complaint requests class certification of any putative plaintiffs who were parties to calls between inmates at WCCF and inmates' attorneys. *Id.* at 5. Hurdsman seeks compensatory and punitive damages. *Id.*

Gleason moves for judgment on the pleadings arguing that he is entitled to qualified immunity and dismissal of all of the causes of action against him. Dkt. 55, at 1. Gleason asserts that he was not personally involved in recording or storing recordings of Hurdsman's confidential phone calls, did not implement a policy that caused the alleged injuries, and was not the policymaker for the Sheriffs' office at the time. Dkt. 55, at 2. Hurdsman also argues that any official capacity claims against him are duplicative of actions brought against Williamson County and should be dismissed. Dkt. 55, at 2. With respect to Hurdsman's state law claims, Gleason argues

that they must be dismissed pursuant to § 1010.106(f) of the Texas Civil Practice and Remedies Code governing suits filed against governmental employees for conduct within the employees' scope of employment. *Id.* at 3. Gleason states that Hurdsman has failed to plead sufficient facts alleging numerosity, commonality, typicality, and adequate representation for the purposes of class certification. *Id.*

Hurdsman "does not contest dismissal of his § 1983 claims against Gleason in his official capacity, his state law claims against Gleason in his individual capacity, or his class action allegations." Dkt. 58, at 2. Hurdsman's response does not address Gleason's wiretapping claims under 18 U.S.C. § 2511(a). These claims claims, which Gleason has failed to pursue or defend in his response, should be dismissed. *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (plaintiff abandoned claim when she failed to defend claim in response to motion to dismiss); *see also Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (noting that "an issue raised in the complaint but ignored at summary judgment may be deemed waived[ ]") (citation omitted).

The live claims before the undersigned are Hurdsman's individual capacity § 1983 claims for violations of the First, Fourth, Sixth, and Fourteenth Amendments, as well as his *Monell* claim asserted against Gleason.

## II.    LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Motions pursuant to Rule 12(c) are analyzed under the same standard as a Rule

12(b)(6) motion to dismiss for failure to state a claim. *Phillips v. City of Dallas*, 781 F.3d 772, 775 (5th Cir. 2015).

To avoid dismissal for failure to state a claim pursuant to Rule 12(b)(6), a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court determines whether the plaintiff has stated both a legally cognizable and plausible claim; the court should not evaluate the plaintiff's likelihood of success. *Lone Star Fund V. (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Based upon the assumption that all the allegations in the complaint are true, the factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A court, however, need not blindly accept each and every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions masquerading as factual conclusions. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). When the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct, then the claim is plausible on its face. *Iqbal*, 556 U.S. at 678. The plausibility standard, unlike the "probability requirement," requires more than a sheer possibility that a defendant acted unlawfully. *Id.* A pleading offering

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

Further, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 763 (5th Cir. 2019). The Court may also consider matters of public record, *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995), and any other matters of which it may take judicial notice. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

## III.    DISCUSSION

### A.    *Monell* Claim

Hurdsman's response argues that he has sufficiently alleged a *Monell* claim against Gleason because he has pleaded that Gleason was the final policymaker of the WCCF and that it was the "practice, policy of custom of the WCCF to record and store confidential and privileged attorney calls and then provide them to law enforcement and criminal prosecutors." Dkt. 58, at 8. Hurdsman has already assented to dismissal of official capacity claims against Gleason. *Id.* a 2. This is because claims against an official in his or her official capacity are "only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal citations and quotations omitted). When the governmental entity itself is a defendant, claims against employees of the entity in their official capacity are redundant, and therefore should be dismissed. *Castro Romero v. Becken*, 256 F.3d

349, 355 (5th Cir. 2001). Hurdsman has sued Williamson County directly; thus, he will not be prejudiced by dismissal of claims against Gleason in his official capacity. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). Williamson County remains a party to this matter, therefore Hurdsman's *Monell* claim against Gleason in his official capacity should be dismissed.

As to Hurdsman's *Monell* claim against Gleason in his individual capacity, *Monell* claims are intended to be brought against municipalities and local government entities, not government employees in their individual capacities. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (stating municipality is a person subject to suit under Section 1983 under *Monell* and that under *Monell* a "local government entity may be sued") (internal citations and quotations omitted); *Burge v. Par. of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999) ("In *Monell,* the Supreme Court held that *a local government* is liable under § 1983 for its policies that cause constitutional torts....") (emphasis added). Accordingly, Hurdsman's individual capacity *Monell* claim against Gleason should be dismissed.

### B. Individual Capacity § 1983 Claims Alleging Violations of the First, Fourth, Sixth, and Fourteenth Amendments

Claims against government officials in their individual capacities "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer*, 502 U.S. at 25. Hurdsman asserts that he is suing Gleason in his individual capacity for actions taken pursuant to duties and/or authorities of his position as Chief of the WCCF while Hurdsman was incarcerated there, which is the kind of claim precisely for which § 1983 imposes liability. *Id.* ("Personal-capacity

suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, [o]n the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.") (internal quotation marks omitted).

Here, Hurdsman alleges that Gleason, along with co-defendants Williamson County and ICS, violated Hurdsman's (1) First Amendment right to freedom of speech and association to privately consult with his attorneys; (2)  Fourth Amendment right against illegal search and seizure of privileged phone calls; (3) Sixth Amendment right to effective assistance of counsel by interfering with his confidential attorney-client phone calls; (4) and Fourteenth Amendment rights in providing the recordings of his privileged phone calls to law enforcement officers and prosecutors harming his defense and affecting his right of access to the courts. Dkt. 17, at 12-15.

Gleason moves for judgment on the pleadings arguing that he is entitled to qualified immunity because the complaint, "even when taken as true does not establish that Sheriff Gleason personally violated Hurdsman's constitutional rights, or acted objectively unreasonable." Dkt. 55, at 3, 7. The doctrine of qualified immunity protects public officials from suit and liability for damages under § 1983 unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Thus, in determining qualified immunity, courts engage in a two-step analysis: (1) was a statutory or constitutional right violated on

the facts alleged; and (2) did the officer's actions violate clearly established statutory or constitutional rights of which a reasonable person would have known? *Id.* at 623-24.

At the motion-to-dismiss stage, a district court must find that the plaintiff's pleadings assert facts, which, if true, would overcome the defense of qualified immunity. *Backe v. LeBlanc,* 691 F.3d 645, 648 (5th Cir. 2012). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* Additionally, "when a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation ... to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.,* 942 F.3d 258, 263-64 (5th Cir. 2019).

Lastly, in reaching its conclusion on qualified immunity, the district court may follow the traditional two-step approach, first determining whether on the facts alleged, plaintiffs have stated a claim for the violation of a constitutional right, and then analyzing whether the right at issue was clearly established at the time of the defendant's actions, but the two-step process is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Courts have discretion as to "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* If the court determines that the right asserted by

the plaintiff was not clearly established, it need not reach the more difficult constitutional question. *Camreta v. Greene*, 563 U.S. 692, 707 (2011).

Gleason first moves for judgment on the pleadings on the basis that Hurdsman's complaint "proffers little allegations about Sheriff Gleason individually." Dkt. 55, at 5. Among other factual allegations, as to Defendant Gleason, Hurdsman states:

> 31. However, prior to making any of those telephone calls to his attorneys using the WCCF inmate telephones Plaintiff Hurdsman requested and informed WCCF officers, deputies, administrators and **Defendant Mike Gleason**, personally, whom was the Chief over the WCCF at that time, both verbally and in writing, that several of the phone numbers he was going to call using the WCCF inmate phone system should be designated private attorney calls.

> 32. Plaintiff Hurdsman further requested and informed WCCF officers, deputies, administrators and **Defendant Mike Gleason**, personally, that said private attorney calls that he was going to make were confidential attorney-client privileged phone calls and should not be recorded or otherwise stored or listened to as a matter of law.

> 33. **Defendant Mike Gleason**... personally acknowledged and agreed that the telephone calls and numbers designated by [Hurdsman] as being privileged attorney-client phone calls were protected by law and would not be recorded, stored or provided to third parties.

> 37. **Defendant Mike Gleason**... listened to, recorded and stored on their computer servers said telephone calls and conversations between Hurdsman and his attorneys he made while confined at WCCF.

> 38. **Defendant Mike Gleason**... then provided said telephone calls and conversations between Hurdsman and his attorneys to law enforcement officers and agents, and to the United States Attorneys Office and its attorneys and agents, without lawful authority, waiver or consent of Hurdsman and that of his attorneys.

Dkt. 17, at 7-8.

The undersigned finds that the complaint sufficiently alleges facts as to Gleason's direct and personal involvement in the violative conduct alleged.

The relevant inquiry now is whether these allegations related to the illicit recording, storing, and sharing of privileged phone calls between Hurdsman and his attorneys while held as a pretrial detainee constitute claims for violations of a constitutional right that was clearly established at the time of Gleason's actions.

      1.    Constitutional Violation

        a.   First Amendment Claim

Hurdsman's complaint states that Gleason "knowingly and willfully violated the Plaintiffs' rights [. . .] specifically the right to freedom of protected speech and association to privately and confidentially have and consult his attorneys, and not have those privileged conversations intercepted, listened to, recorded, stored and given to others." Dkt. 17, at 13. Hurdsman has apparently abandoned his freedom of speech and association claims as his response posits his First Amendment claim as implicating his "right of access to the courts." Dkt. 58, at 5. His response as to his First Amendment claim argues "restrictions placed upon the attorney-client relationship effectively diminish a prisoners' right of access to the courts [and] violate a prisoner's clearly established First Amendment rights." *Id.* To the extent Hurdsman has abandoned his protected speech and freedom of association claim by not defending it in his response, that claim should be dismissed. Hurdsman's new First Amendment argument related to the right to petition and his right of access to the courts should also be dismissed. *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*,

429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (citing *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990))).

### b.   Fourteenth Amendment Denial of Access to the Courts

The Fourteenth Amendment Due Process Clause confers a right to meaningful access to the courts. *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 857 (5th Cir. 2000) ("Access to the courts is a constitutionally protected fundamental right and one of the privileges and immunities awarded citizens under Article IV and the Fourteenth Amendment."). Detainees have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010). Access-to-courts claims fall into two categories: "forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing or filing suits at the present time,' and backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to see some particular order of relief.'" *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002)).

To state a claim based on backward-looking access-to-courts, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another

suit that may yet be brought. *United States v. McRae*, 702 F.3d 806, 830-31 (5th Cir. 2012) (citing *Christopher*, 536 U.S. at 415).

As to his access-to-courts claim Hurdsman alleges that recording and sharing of his calls "gave law enforcement and prosecutors an unlawful and unfair tactical advantage over the [Hurdsman] and [his] pending criminal charges; law enforcement and prosecutors then used said advantage to impair and impede certain defenses of those law enforcement investigations and pending criminal charges, which ultimately severely prejudiced and harmed [Hurdsman] and the final outcome and disposition of those criminal investigations and pending criminal charges." Dkt. 17, at 14.

The District Court has already found that Hurdsman's access-to-courts claim "fails on fails on two fronts: first, he fails to identify a non-frivolous underlying claim and, second, he fails to identify a remedy that is not otherwise available in some suit that may yet be brought." Dkt. 36, at 16. Specifically, the District Court found that Hurdsman's proffered underlying claim is related to "a defense or legal strategy in one of his criminal cases, but [that] he fails to identify which case or which strategy." *Id.* Ultimately "[b]ecause Hurdsman's complaint does not identify a non-frivolous underlying claim and he is able to state a claim based for constitutional violations based on the same allegations, his access-to-courts claim fails as a matter of law." *Id.*[1]

---

[1] The District Court concluded that because Hurdsman stated a claim for other constitutional violations, there are other remedies available to him. Dkt. 36, at 16 (citing *Christopher*, 536 U.S. at 415 ("There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.")).

Hurdsman's Fourteenth Amendment access to the courts claim, as to Gleason, should be dismissed.

c. Fourth Amendment Search and Seizure

The Fourth Amendment protects individuals "against unreasonable searches and seizures" conducted by government officials. U.S. Const. amend. IV. "'The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 211-12 (5th Cir. 2001) (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)). The government cannot monitor or record a call without violating the Fourth Amendment if the parties have a reasonable expectation of privacy in their conversation. *Katz v. United States*, 389 U.S. 347, 351-52 (1967). To state a claim under the Fourth Amendment, a plaintiff must show he had an actual expectation of privacy, and that his expectation is one that society recognizes as reasonable. *See Zaffuto v. City of Hammond*, 308 F.3d 485, 488 (5th Cir. 2002) (citing *Katz*, 389 U.S. at 351-52). Both attorneys and clients have an objectively reasonable expectation of privacy in confidential communications between them. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981) (attorney client privilege is the "oldest of the privileges for confidential communications known to the common law").

Hurdsman alleges he informed Defendants, including Gleason, both orally and in writing, "that several of the phone numbers he was going to call using the WCCF inmate phone system should be designated private attorney calls," that the calls were "confidential attorney-client privileged phone calls" and should not be "recorded,

stored, or provided to third parties." Dkt. 17, at 7. He further alleges Gleason "listened to, recorded, and stored [. . .] said telephone calls and conversations" and provided them to "law enforcement officers and agents, and to the United States Attorneys Office and its attorneys and agents without lawful authority, waiver or consent of Hurdsman and that of his attorneys." *Id.* at 8.

Based on these allegations, the District Court found that Hurdsman "stated a claim for a violation of the Fourth Amendment." Dkt. 36, at 14 (citing *Gennusa v. Shoar*, 748 F.3d 1103, 1110-12 (11th Cir. 2014) (local criminal defense attorney and client had reasonable expectation of privacy when communicating with pretrial detainee client in interrogation room when officials led attorney to believe conversations would not be monitored).

        d.    Sixth Amendment interference with attorney-client relationship

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the assistance of counsel for his defense." U.S. Const. amend. VI. "A governmental intrusion 'through surreptitious electronic means or through an informant' upon 'the confidential relationship between a criminal defendant and his attorney' violates the Sixth Amendment right to counsel." *United States v. Diaz*, 941 F.3d 729, 738 (5th Cir. 2019) (quoting *United States v. Zarzour*, 432 F.2d 1, 3 (5th Cir. 1970)). The right only protects against government intrusion in the attorney-client relationship in a criminal setting, *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974), and attaches when prosecution is commenced, *see Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 198 (2008). To prevail on a claim that the state

actor intruded on privileged attorney-client communications, the plaintiff must show prejudice. *See Diaz*, 941 F.3d at 739.

Hurdsman alleges Gleason "interfered with [Hurdsman]'s and [his] attorney's privileged, confidential and private, communications by unlawfully intercepting, listening to, recording, storing and/or providing them to law enforcement and prosecutors without lawful authority or waiver or consent of the Plaintiffs; which prejudiced, harmed and negatively affected [Hurdsman]'s pending criminal charges and the dispositions thereto, and other criminal investigations. This further violated Plaintiffs' sixth amendment right to counsel, and the effective assistance of counsel thereto." Dkt. 17, at 13.

The District Court found that these claims "suffice[] to state a claim for a violation of [Hurdsman]'s Sixth Amendment right to counsel." Dkt. 36, at 15.

2.    Clearly Established Right

Having reached the more difficult question of whether Hurdsman has stated claims for a violation of his rights under the Constitution's Fourth and Sixth Amendments, the undersigned now turns to whether Hurdsman has met his burden of showing that his rights were clearly established at the time of Gleason's actions. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019); *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation mark omitted). "If officers

of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). This rule "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). However, the Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Id.* at 742. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis added). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (internal quotation marks omitted).

The undersigned finds that Hurdsman's right under the Fourth and Sixth Amendments to have his confidential calls with his defense counsel not recorded and shared with law enforcement officers and agents or prosecuting attorneys was clearly established at the time of Gleason's actions. Dkt. 17, at 11.  Admittedly, pretrial detainees and prisoners do not enjoy the same constitutional protections as unincarcerated individuals. *See Hudson v. Palmer,* 468 U.S. 517, 527 (1984) (inmate has no reasonable expectation of privacy in prison cell); *Bell v. Wolfish,* 441 U.S. 520, 556 (1979) (constitutional rights of inmates are "limited by the legitimate goals and policies of penal institution"). However, it is well established that  all parties who have a reasonable expectation of privacy in a conversation are protected by the Fourth Amendment. *See Gennusa,* 879 F. Supp. 2d at 1348; *Lonegan v. Hasty,* 436 F.

Supp. 2d 419, 435 (E.D.N.Y. 2006) ("Although the privilege afforded to attorney–client communications generally belongs to the client, not to the attorney, *see United States v. Goldberger & Dubin, P.C.,* 935 F.2d 501, 504 (2d Cir. 1991), the existence of robust protections for attorney-client communications makes [attorney-plaintiffs'] expectation of privacy in their conversations with Detainees reasonable."). It is also well established that both attorneys and clients have an objectively reasonable expectation of privacy in confidential communications between an attorney and client. *See Upjohn Co. v. United States,* 449 U.S. 383 (1981) (attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law"). Fourth Amendment protection thus extends to attorneys engaged in confidential communications with their clients and the expectation of privacy in those communications is objectively reasonable.

As to the Sixth Amendment violation, the Fifth Circuit held in *Zarzour,* "[i]t is well settled that an intrusion by the government upon the confidential relationship between a criminal defendant and his attorney, either through surreptitious electronic means or through an informant, is a violation of the Sixth Amendment right to counsel." 432 F.2d at 2 (citing *Hoffa v. United States,* 385 U.S. 293 (1966); and *Black v. United States,* 385 U.S. 26 (1966)).

Both Hurdsman's Fourth Amendment search and seizure claim and his Sixth Amendment interference with attorney-client relationship claim under § 1983 state claims for violations of a constitutional rights that were clearly established at the time of Gleason's alleged actions. As a result, the undersigned recommends that

Gleason's motion for judgment on the pleadings as to these claims on qualified immunity grounds be denied.

### C.   Punitive Damages

Hurdsman's complaint seeks punitive damages of $5,000,000 alleging that Defendants, including Gleason, acted "knowingly, deliberately and willfully with malicious intent to harm, impede, interfere, prejudice, and obstruct." Dkt. 17, at 16. Under § 1983, punitive damages may be awarded only if the official conduct is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights. *Smith v. Wade,* 461 U.S. 30, 37 (1983). The latter standard requires "recklessness in its subjective form," *i.e.*, "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Williams v. Kaufman Cnty.,* 352 F.3d 994, 1015 (5th Cir. 2003) (citing *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 536 (1999). The Supreme Court has recognized that punitive damages are recoverable against municipal employees when sued in their individual capacities pursuant to a § 1983 claim. *See Smith,* 461 U.S. at 35.

Gleason argues "Hurdsman is not entitled to punitive damages against [him] because Hurdsman has not presented any allegations of actual malice." Dkt. 55, at 15. Hurdsman responds that he alleges that he informed Gleason, and Gleason acknowledged he understood, that the "telephone calls and numbers designated by Hurdsman as privileged attorney-client phone calls were protected by law and would not be recorded" and that "in reliance on these promises Hurdsman shared

confidential information with his attorneys." Dkt. 58, at 9. Hurdsman states that, not only did Gleason listen and record these calls, but shared them "so that the substance of these communications could be used against Hurdsman regarding pending charges…." *Id.* at 58. Hurdsman argues that these factual allegations "support the reasonable inference that Gleason deliberately coaxed Hurdsman into believing his conversations would not be recorded to encourage Hurdsman to share freely with his attorneys information about pending cases that would allow investigators and prosecuting attorneys to obtain an unlawful tactical advantage." *Id.* Therefore, Hurdsman contends, Gleason acted recklessly, with callous indifference, and "evil motive or intent." *Id.*

Hurdsman's complaint states that he informed Gleason about the nature of the calls, that Gleason acknowledged the calls "were protected by law" and yet subsequently shared these calls, but the complaint does not plead that Hurdsman relied on Gleason's acknowledgment and that Gleason intended to coax Hurdsman into speaking freely in a manner that might give prosecutors and law enforcement an unlawful tactical advantage. Dkt. 17, at 7. However, viewed in the light most favorable to Hurdsman, the undersigned finds that his pleadings lead to the reasonable inference that he alleges that Gleason acted with callous indifference to his constitutional rights. Accordingly, he has pleaded facts, that if true, may support a claim for punitive damages. Thus, Hurdsman's claims for punitive damages should not be dismissed at this time.

### D.     Hurdsman's Request for Leave to Amend

In his responses to Gleason's motion for judgment on the pleadings, Hurdsman requests leave to amend in the event the District Court finds that there are deficiencies in his pleadings and grants Gleason's motion. Dkt. 58, at 9-10. Should the District Court dismiss some of Hurdsman's claims based on the foregoing analysis, and if Hurdsman still wants to amend his pleadings, he should file a motion for leave to amend pursuant to Local Rules  CV-15(b) and CV-7(b). These rules govern amended pleadings and state that that "[w]hen a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave." W.D. Tex. Loc. R. CV-15(b); *id.* CV-7(b). Since Hurdsman has not included an executed copy of his proposed amended pleading, his request for leave to amend included in his response, should be denied.

## IV.     RECOMMENDATION

In accordance with the forgoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Gleason's motion for judgment on the pleadings, Dkt. 55.

Specifically, the undersigned recommends that the District Court **GRANT** Gleason's Motion and **DISMISS WITH PREJUDICE** Hurdsman's § 1983 claims against Gleason in his official capacity, the *Monell* claims against Gleason in his official and individual capacities, Hurdsman's First Amendment protected speech and freedom of association claim, his state law claims against Gleason in his

individual capacity, as well as Hurdsman's class action and wiretapping claims under 18 U.S.C. § 2511(a). The undersigned **FURTHER RECOMMENDS** that the District Court **GRANT** Gleason's motion with respect to Hurdsman's § 1983 Fourteenth Amendment right of access to the courts claim and **DISMISS WITHOUT PREJUDICE** that claim.

The undersigned **RECOMMENDS** that the District Court **DENY** Gleason's motion with respect to Hurdsman's § 1983 Fourth Amendment search and seizure claim and Sixth Amendment interference with attorney-client relationship claim.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED September 14, 2023.

_____

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE