IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RODNEY A. HURDSMAN, *on behalf of himself and all others similarly situated*, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:22-CV-254-RP |
| MIKE GLEASON, *Sheriff of Williamson County, Texas*; COUNTY OF WILLIAMSON, TEXAS; COLLECT SOLUTIONS IC GROUP; and INMATE CALLING SOLUTIONS *d/b/a* IC SOLUTIONS, | § § § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants Sheriff Mike Gleason ("Gleason") and Williamson County's (the "County") (collectively, the "County Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint, (Dkt. 83). (Dkt. 96). Plaintiff Rodney A. Hurdsman ("Hurdsman") filed a response in opposition, (Dkt. 98); the County Defendants filed a reply, (Dkt. 100); and Hurdsman filed a sur-reply, (Dkt. 102). Also before the Court is Hurdsman's motion to compel discovery from the County Defendants. (Dkt. 93). The County Defendants filed a response in opposition, (Dkt. 97); Hurdsman did not file a reply. Having considered the parties' briefs, the record, and the relevant law, the Court finds that the County Defendants' motion to dismiss the second amended complaint, (Dkt. 96), should be granted in part and denied in part, while Hurdsman's motion to compel, (Dkt. 93), should be granted.

## I. BACKGROUND

This is a prisoner's civil rights case arising from the alleged recording of privileged phone calls between Hurdsman and his attorney while Hurdsman was a pretrial inmate at the Williamson

County Correctional Facility. (2d Am. Compl., Dkt. 83, at 4–9). Hurdsman originally brought claims under (1) the First Amendment (pursuant to 28 U.S.C. § 1983); (2) the Fourth Amendment (pursuant to 28 U.S.C. § 1983); (3) the Sixth Amendment (pursuant to 28 U.S.C. § 1983); (4) the Fourteenth Amendment (pursuant to 28 U.S.C. § 1983); (5) a municipal liability claim under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978); (6) the federal and Texas state wiretapping statutes; and (7) several other state statutes. (Am. Compl., Dkt. 17, at 12–16). Hurdsman requested both compensatory and punitive damages, as well as attorney's fees and costs. (*Id.* at 16–17). Hurdsman also requested to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure. (*Id.* at 5).

On August 1, 2022, the County Defendants moved for summary judgment on the basis of qualified immunity and a prior settlement agreement. (Dkt. 26). On March 21, 2023, the Court denied the County Defendants' Motion for Summary Judgment, (Dkt. 26), as well as the County Defendants' Opposed Motion for Protective Order and Motion to Stay Discovery, (Dkt. 23). (Order, Dkt. 36). On April 18, 2023, the County Defendants filed a Motion for Reconsideration of the Court's order denying their motion for summary judgment, (Dkt. 40), which the Court denied on December 14, 2023, (Order, Dkt. 76).

On May 19, 2023, Gleason moved for judgment on the pleadings under Rule 12(c). (Dkt. 49; *see also* Corrected Mot., Dkt. 55 (filed June 2, 2023)). On January 12, 2024, the Court issued an order adopting in part and rejecting in part the report and recommendation of United States Magistrate Judge Dustin Howell, (R. & R., Dkt. 65), concerning Gleason's Corrected Motion for Judgment on the Pleadings Pursuant to Rule 12(c), (Dkt. 55). (Order, Dkt. 77).[1] Accordingly, some of Hurdsman's claims survived, while some were dismissed. The Court's order also allowed Hurdsman to file a

---

[1] On January 16, 2024, United States Magistrate Judge Dustin Howell mooted the County Defendants' motion for stay of discovery pending a ruling on qualified immunity, (Dkt. 50). (Text Order dated Jan. 16, 2024).

motion to amend his complaint. (*Id.* at 7–8). On January 16, 2024, the County Defendants filed a Motion For Permission To Appeal Interlocutory Orders And For Stay Pending Appeal. (Dkt. 78). On February 8, 2024, the Court denied the County Defendants' motion, (Dkt. 78). (Order, Dkt. 84).

Meanwhile, on February 5, 2024, the Court granted Hurdsman's unopposed motion for leave to file a second amended complaint, (Dkt. 82), which was docketed the same day. (Dkt. 83). In his second amended complaint, Hurdsman brings seven claims: (1) infringement of freedom of speech and association under the First Amendment; (2) illegal search and seizure under the Fourth Amendment; (3) interference with the attorney-client relationship under the Sixth Amendment; (4) interference with and denial of access to the courts under the First and Fourteenth Amendments; (5) municipal liability under *Monell*, 436 U.S. 658, against the County; (6) violations of the federal and Texas state wiretapping statutes; and (7) invasion of privacy under Texas law. (2d Am. Compl., Dkt. 83, at 10–13). Hurdsman seeks compensatory and punitive damages, alongside court costs and attorney's fees. (*Id.* at 13–14).

On March 19, 2024, Defendant Inmate Calling Solutions *d/b/a* IC Solutions ("ICS") answered the second amended complaint. (Dkt. 91). After the Court resolved Hurdsman and the County Defendants' briefing disputes, (*see* Order, Dkt. 95; *see also* Dkts. 87, 89, 90, 94), on March 27, 2024, the Clerk of the Court filed the County Defendants' Motion To Dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 96). Hurdsman filed a response in opposition, (Dkt. 98); the County Defendants filed a reply, (Dkt. 100); and Hurdsman filed a sur-reply, (Dkt. 102). Meanwhile, on March 22, 2024, Hurdsman filed his motion to compel discovery from the County Defendants. (Dkt. 93). On March 29, 2024, the County Defendants filed a response in opposition to the motion to compel, (Dkt. 97), while Hurdsman did not file a reply in support.

## II. LEGAL STANDARD

### A. The Motion to Dismiss

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not

consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009)).

### B. The Motion to Compel

The scope of discovery is broad. *Crosby v. La. Health Serv. and Indem. Co.,* 647 F.3d 258, 262 (5th Cir. 2011). Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Crosby,* 647 F.3d at 262 (quoting *Wiwa v. Royal Dutch Petrol. Co.,* 392 F.3d 812, 820 (5th Cir. 2004)). A party seeking discovery may file a motion to compel after conferring in good faith to secure that discovery without court action. Fed. R. Civ. P. 37(a). If the motion is filed and granted, the Court must order the resisting party to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5).

"Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections." *Hobbs v. Petroplex Pipe & Constr., Inc.,* No. MO:17-CV-00030-DC, 2018 WL 3603074, at *2 (W.D. Tex. Jan. 29, 2018); *see also McLeod, Alexander, Powel and Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990). "A party objecting to discovery

must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome or oppressive or vexatious or not reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015) (stating that the party resisting discovery has the burden to "specifically object") (citing *McLeod*, 894 F.2d at 1485).

### III. DISCUSSION

### A. The Motion to Dismiss

The County Defendants seek dismissal of most of the claims asserted against them in the second amended complaint pursuant to Rule 12(b)(6). (Mot. Dismiss, Dkt. 96). The County Defendants make four arguments: (1) Hurdsman "has failed to plead that he exhausted all available administrative remedies before filing suit, as strictly required by the [Prison Litigation Reform Act ('PLRA')]," assuming that the PLRA applies to this case, (*id.* at 8–10); (2) all of Hurdsman's claims are barred by the statute of limitations, (*id.* at 10–14); (3) most of his claims fail to plausibly allege a claim for relief, (*id.* at 14–28); and (4) Hurdsman is not entitled to compensatory or punitive damages from the County, (*id.* at 28–30).

In response, Hurdsman agrees to "dismissal of his state law causes of action for violation of § 1602(b) of the Texas Penal Code and for invasion of privacy against the County and Gleason in his official capacity based on County Defendants' claims of governmental immunity." (Resp., Dkt. 98, at 2). "He further does not contest dismissal of his claim for compensatory damages for his § 1983 claims, or his claim for punitive damages against the County." (*Id.*). Accordingly, the Court will dismiss Hurdsman's state wiretapping and invasion of privacy claims against the County Defendants. Further, the Court will dismiss Hurdsman's claim for compensatory damages against the County Defendants with respect to his Section 1983 claims and his claim for punitive damages against the County.

Therefore, the following claims remain: (1) infringement of freedom of speech and association under the First Amendment; (2) illegal search and seizure under the Fourth Amendment; (3) interference with the attorney-client relationship under the Sixth Amendment; (4) interference with and denial of access to the courts under the First and Fourteenth Amendments; (5) municipal liability under *Monell*, 436 U.S. 658, against the County; and (6) violations of the federal wiretapping statute. (2d Am. Compl., Dkt. 83, at 10–13). Hurdsman seeks punitive damages from Gleason. (*Id.* at 13–14).

Hursdman contests dismissal of the remainder of his claims. He argues that Gleason has waived arguments not raised in his Rule 12(c) motion pursuant to Rule 12(g)(2), (Dkt. 55). (Resp., Dkt. 98, at 2–4). Hurdsman also argues that the County Defendants have not borne their burden of proving that he did not exhaust his administrative remedies under the PLRA. (*Id.* at 4–7). He also argues that he brought his claims before the statute of limitations tolled pursuant to the discovery rule. (*Id.* at 7–10). Hurdsman also claims that he has adequately pled claims for relief on his First Amendment, Fourteenth Amendment, federal wiretapping, and *Monell* claims and that Gleason is not entitled to qualified immunity. (*Id.* at 10–19).

In their reply, the County Defendants assert that Gleason is not subject to Rule 12(g)(2)'s consolidation requirement for waiver of arguments. (Reply, Dkt. 100, at 1–5). The County Defendants also re-urge their arguments that Hurdsman did not allege administrative exhaustion under the PLRA, that the discovery rule exception to the statute of limitations does not apply, and that Hurdsman's claims fail to meet the pleading standards. (*Id.* at 5–10).

In his sur-reply, Hurdsman argues that administrative exhaustion under the PLRA is an affirmative defense. (Sur-Reply, Dkt. 102, at 1–2). Hurdsman also re-urges that the discovery rule applies and that his second amended complaint has met the Rule 12 pleading standards. (*Id.* at 2–4).

The Court will address each of the County Defendants' arguments for dismissal in turn.[2] At the outset, the Court notes that Hurdsman's Rule 12(g)(2) waiver argument in his response is unavailing. (Resp., Dkt. 98, at 2–4). "Rule 12(g) [does] not require consolidation here because Rule 12(h)(2) explicitly excepts from the consolidation requirement motions based on the defense of failure to state a claim upon which relief can be granted." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007); *see also Momentum Mktg. Sales & Serv., Inc. v. Curves Int'l, Inc.*, No. W-07-CA-048, 2009 WL 10669901, at *1 (W.D. Tex. July 28, 2009) ("Defendant's motion pursuant to Rule 12(b)(6) is not prohibited by the waiver provisions in Rules 12(g) and (h).").

### 1. Administrative Exhaustion Under the PLRA

As the Court has repeatedly held in this action, the PLRA bars the Court from enforcing the settlement agreement from the previous lawsuit between Hurdsman and the County Defendants. (Order, Dkt. 36, at 3–8; Order, Dkt. 76, at 3–4). Recognizing the Court's continued holdings that the PLRA applies, the County Defendants argue that Hurdsman "has failed to plead that he exhausted all available administrative remedies before filing suit, as strictly required by the PLRA." (Mot. Dismiss, Dkt. 96, at 8–10). In response, Hurdsman argues that the County Defendants have not borne their burden of proving that he did not exhaust his administrative remedies under the PLRA and that administrative exhaustion under the PLRA is an affirmative defense. (Resp., Dkt. 98, at 4–7; Sur-Reply, Dkt. 102, at 1–2). The Court agrees with Hurdsman. As the United States Supreme Court has held, "[f]ailure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Accordingly, Hurdsman was not required to plead administrative exhaustion under the PLRA. Therefore, the Court will proceed to the County Defendants' next argument.

---

[2] Because Hurdsman has agreed to drop his compensatory and punitive damages claims against the County, (Resp., Dkt. 98, at 2), the Court will not address the County Defendants' argument with respect to these damages, (Mot. Dismiss, Dkt. 96, at 28–30).

## 2. The Statute of Limitations

Second, the County Defendants argue that all of Hurdsman's claims are barred by the applicable statutes of limitations. (Mot. Dismiss, Dkt. 96, at 10–14). In response, Hurdsman argues that he brought his claims before the statutes of limitations tolled under the discovery rule. (Resp., Dkt. 98, at 7–10). The Court finds that Hurdsman has adequately pled the discovery rule exception to the relevant statutes of limitations. The parties agree that each of Hurdsman's claims is subject to a two-year statute of limitations. (*See* Mot. Dismiss, Dkt. 96, at 12; Resp., Dkt. 98, at 7–8). "Under federal law, an action accrues when the plaintiff becomes aware of both the existence of an injury and its cause." *Weeks v. Collier*, No. 22-10126, 2023 WL 7703823, at \*2 (5th Cir. Nov. 15, 2023) (citing *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 190 (5th Cir. 2011), *abrogated on other grounds by United States v. Wong*, 575 U.S. 402 (2015)). The "'discovery rule' delays the accrual period until the plaintiff knew of the injury and its cause or should have discovered the injury and its cause through reasonable diligence." *Id.* The Court finds that Hurdsman has adequately alleged that he only became aware at the beginning of 2021 that his phone calls had been recorded. (2d Am. Compl., Dkt. 83, at 8–9 ("Hurdsman first became aware of Defendants' unlawful conduct of recording, storing, and providing to third parties his private attorney calls and conversations on or about the beginning of 2021 . . . .")). Hurdsman then initiated this suit in March of 2022, well under two years later. (Compl., Dkt. 1). Accordingly, viewing the allegations in the complaint in the light most favorable to Hurdsman, he has adequately pled that the discovery rule exception applies to the statute of limitations of each of his claims.

## 3. Rule 12(b)(6)

Third, the County Defendants argue that most of Hurdsman's claims fail to plausibly allege a claim for relief. (Mot. Dismiss, Dkt. 96, at 14–21, 23–28 (arguing for dismissal under Rule 12(b)(6) of Hurdsman's First Amendment, Fourteenth Amendment, federal wiretapping, and *Monell* claims

and for the application of qualified immunity)).[3] In response, Hurdsman argues that he has adequately pled claims for relief on his First Amendment, Fourteenth Amendment, federal wiretapping, and *Monell* claims and that Gleason is not entitled to qualified immunity. (Resp., Dkt. 98, at 10–19).

<u>a. First Amendment Claim for Infringement of Freedom of Speech and Association</u>

Hurdsman argues that the County Defendants and ICS violated his First Amendment "right to freedom of protected speech and association to privately and confidentially have and consult his attorneys, and not have those privileged conversations intercepted, listened to, recorded, stored and given to others." (2d Am. Compl., Dkt. 83, at 10). The County Defendants argue that "Hurdsman has not alleged that his ability to communicate or associate with his criminal defense attorneys— whether by telephone, mail, or in-person meetings—was in any way infringed by the County Defendants' alleged recording of his attorney-client telephone calls." (Mot. Dismiss, Dkt. 96, at 16). The County Defendants thus argue that his conversations with his attorneys could not have been chilled by the activity that he only allegedly discovered in 2021. (*Id.*). In response, Hurdsman notes that "he specifically alleges [the recordings] revealed his strategy and defenses against pending criminal charges against him, influencing the ultimate and final disposition of those charges." (Resp., Dkt. 98, at 11 (citing 2d Am. Compl, Dkt. 83, ¶ 47).

It is well-established that a prison inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78, 95 (1987) (same); *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (same). Although the Fifth Circuit has not

---

[3] The County Defendants do not argue for dismissal of Hurdsman's claim for illegal search and seizure under the Fourth Amendment nor his claim for interference with the attorney-client relationship under the Sixth Amendment. (*See* Mot. Dismiss, Dkt. 96). Accordingly, the Court will not analyze these claims. *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (the movant bears the burden of proof on a 12(b)(6) motion).

addressed these specific facts, it has held that "interference [with a prisoner's legal mail] may violate the prisoner's First Amendment right to free speech—i.e., the right to be free from unjustified governmental interference with communication." *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Hurdsman alleges the County Defendants' staff monitored, recorded, and distributed his privileged communications regarding his pending criminal cases to local law enforcement officers. Although Hurdsman was not aware of this monitoring at the time it occurred, the County Defendants do not point to any controlling case law supporting their precise argument that Hurdsman had to be aware of the monitoring for them to have violated his First Amendment rights. *See, e.g., Jones v. Brown*, 461 F.3d 454, 359 (3d. Cir. 2006) (state prison's "pattern and practice" of opening attorney mail outside the presence of inmate "interferes with protected communications, strips those protected communications of their confidentiality," and "impinges upon the inmate's right to freedom of speech"); *accord Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008). Accordingly, the Court concludes Hurdsman has adequately pled infringement of freedom of speech and association in violation of his First Amendment rights.

b. First and Fourteenth Amendment Claim for Interference with and Denial of Access to the Courts

Hurdsman argues that the County Defendants and ICS's "actions in surreptitiously intercepting, recording, listening, storing and disseminating his private and confidential attorney-client communications effectively diminished his right of access to the courts" under the First and Fourteenth Amendments. (2d Am. Compl., Dkt. 83, at 10–11). The County Defendants also argue that Hurdsman's claim for interference with and denial of access to the courts under the First and Fourteenth Amendments fails. (Mot. Dismiss, Dkt. 96, at 17–19). Specifically, the County Defendants argue that Hurdsman "fails to proffer any allegations about an underlying nonfrivolous claim related to a specific criminal case or criminal defense strategy. . . or identify what relief the County Defendants' alleged conduct has cost him." (*Id.* at 18). In response, Hurdsman argues that

"the Complaint makes clear that County Defendants violated Hurdsman's constitutionally protected right of access to the courts by knowingly and willfully listening, recording, storing, and providing to law enforcement officers and prosecutors Hurdsman's privileged attorney-client conversations." (Resp., Dkt. 98, at 13 (citing 2d Am. Compl, Dkt. 83, ¶¶ 24, 28–29, 37, 42–43).

Detainees have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010). Access-to-courts claims fall into two categories: "forward-looking claims alleging 'that systemic official action frustrates a plaintiff or plaintiff class in preparing or filing suits at the present time,' and backward-looking claims alleging that an official action has 'caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to see some particular order of relief.'" *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002)). To state a claim based on backward-looking access-to-courts, a plaintiff must identify: (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought. *United States v. McRae*, 702 F.3d 806, 830–31 (5th Cir. 2012) (citing *Christopher*, 536 U.S. at 415).

Hurdsman's access-to-courts claim is backward-looking. "[A] backward-looking denial-of-access claim [must] provide a remedy that could not be obtained on an existing claim." *Christopher*, 536 U.S. at 421. The Court has already concluded that Hurdsman has stated a claim for three other constitutional violations,[4] and thus there are other remedies available to him. *See Christopher*, 536 U.S. at 415 ("There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element."). Because Hurdsman is able to state a claim for constitutional

---

[4] The following constitutional claims survive the County Defendants' motion to dismiss: (1) infringement of freedom of speech and association under the First Amendment; (2) illegal search and seizure under the Fourth Amendment; and (3) interference with the attorney-client relationship under the Sixth Amendment.

violations based on these same allegations, he has not identified a remedy that is not otherwise available in some suit that may yet be brought. Therefore, his access-to-courts claim under the First and Fourteenth Amendments fails as a matter of law and must be dismissed.

### c. Federal Wiretapping Claim

Hurdsman alleges that the County Defendants and ICS violated Section One of the Electronic Communications Privacy Act of 1986, 18 U.S.C § 2511 (the "ECPA") when they "unlawfully intercepted, listened to, recorded, stored on their computer servers, disclosed to third parties and used Hurdsman's and his attorneys' confidential, private and attorney-client privileged and protected telephone calls and conversations." (2d Am. Compl., Dkt. 83, at 12). The County Defendants argue that "Hurdsman's federal wiretapping cause of action fails as a matter of law under the law enforcement exception." (Mot. Dismiss, Dkt. 96, at 19). In response, Hurdsman argues that "the law enforcement exception does not apply here." (Resp., Dkt. 98, at 14).

The ECPA generally prohibits the intentional interception, use, or disclosure of telephone communications without at least one communicating party's consent. 18 U.S.C. § 2511. The ECPA authorizes the recovery of civil damages to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a). Section One of the ECPA prohibits the intentional interception of any wire, oral, or electronic communication, as well as the intentional disclosure to "any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(a), (c).

The law enforcement exception exempts investigative or law enforcement officers who intercept telephone conversations in the ordinary course of their duties. 18 U.S.C. § 2510(5)(a)(ii). The County Defendants are correct that inmate phone calls are routinely recorded in correctional

settings, and many circuits have held that such recordings are exempt from the ECPA under the law enforcement exception. (Mot. Dismiss, Dkt. 96, at 19–21); *see, e.g., United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *United States v. Feekes*, 879 F.2d 1562, 1565–66 (7th Cir. 1989); *United States v. Paul*, 614 F.2d 115, 117 (6th Cir. 1980). However, the issue is different here because Hurdsman alleges that his confidential attorney-client telephone communications were recorded and intentionally disclosed to law enforcement officers and prosecutors after he specifically requested that they not be listened to, recorded, stored, or shared. (2d Am. Compl., Dkt. 83, at 5–6). The recording of attorney-client communications is not an ordinary action of law enforcement. *See, e.g., Guild v. Securus Techs., Inc.*, No. 1:14-CV-366-LY, 2015 WL 10818584, at *11 (W.D. Tex. Feb. 4, 2015), *report and recommendation adopted sub nom. Austin Lawyers Guild v. Securus Techs., Inc.*, No. 1:14-CV-366-LY, 2015 WL 11237655 (W.D. Tex. Mar. 23, 2015); *Lonegan v. Hasty,* 436 F.Supp.2d 419, 432 (E.D.N.Y.2006) ("[I]n the prison setting, attorney-client communications generally are distinguished from other kinds of communications and exempted from routine monitoring."). Thus, the law enforcement exception does not apply to the County Defendants. Accordingly, the Court concludes Hurdsman has adequately pled an ECPA claim.

### d. *Monell* Claim

Hurdsman also brings a claim against the County under *Monell*, 436 U.S. 658. He alleges that:

> The County, by and through the Sheriff of Williamson County and his office, and their [Williamson County Correctional Facility ("WCCF")] administrators, deputies and officers owed Hurdsman a duty to refrain from engaging in knowing, willful and reckless unlawful conduct before, during and after any interaction with Hurdsman at the WCCF or otherwise. And, the inadequate and inept policies, procedures and customs of Williamson County, who is the final policy maker of the WCCF and its policy enforcer, and the lack of adequate training, supervision, discipline and overall oversight of the WCCF, was the driving and moving force that served as the basis for the unlawful conduct and unchecked actions of Defendants which violated the rights, privileges and immunities guaranteed and afforded to Hurdsman under the United States Constitution. Therefore, the County is liable as the employer, contractor and/or principal of

Gleason and his WCCF officers and deputies, and ICS, pursuant to
*Monell* . . . .

(2d Am. Compl., Dkt. 83, at 12). The County Defendants argue that "Hurdsman's cause of action

for *Monell* liability against the County fails as a matter of law because he does not allege sufficient

facts to demonstrate that a County policy or custom was the moving force behind any alleged

constitutional violation." (Mot. Dismiss, Dkt. 96, at 23). In response, Hurdsman argues that his

complaint "sufficiently pleads the policy maker's connection to the unconstitutional policy." (Resp.,

Dkt. 98, at 17).

Municipalities and other local governments may be held liable for constitutional violations

under Section 1983 where official policy or custom caused those violations. *Bennett v. City of Slidell*,

728 F.2d 762, 766 (5th Cir. 1984). Municipalities may not, however, be held liable for such violations

under theories of *respondeat superior* or vicarious liability. *Monell*, 436 U.S. at 691–92. To ensure that a

municipality is not subject to liability merely because it employs a tortfeasor, municipal liability under

Section 1983 requires proof of three elements. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th

Cir. 2001). First, there must be an official policymaker "with actual or constructive knowledge of the

constitutional violation." *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 167 (5th Cir. 2010). Second,

there must be an "official policy." *Id.* at 166. Such policy may either be a policy statement,

ordinance, or regulation, or it may be a custom if it is "a persistent, widespread practice of City

officials or employees." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838,

841 (5th Cir. 1984)). Third, there must be "a violation of constitutional rights whose moving force is

the policy or custom." *Id.* at 578; *Zarnow*, 614 F.3d at 166. In short, "[m]unicipal liability requires

deliberate action attributable to the municipality that is the direct cause of the alleged constitutional

violation." *Zarnow*, 614 F.3d at 167.

The Court finds that Hurdsman's *Monell* claim fails because he has not shown that there is or

was an official policy regarding the interception, listening, recording, storing, or disclosure of

attorney-client telephonic communications. Hurdsman identifies no policy statement, ordinance, regulation, or custom of the County's officials or employees. While Hurdsman is not required to allege "specific facts that prove the existence of a policy," he must at least plead the existence of an official policy. *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015). Accordingly, Hurdsman's allegations are insufficient to state a claim for municipal liability, and his *Monell* claim must be dismissed.

e. Punitive Damages Claim

Hurdsman seeks punitive damages of $5,000,000 from Gleason for acting "with reckless or callous indifference and/or knowingly, deliberately and willfully with malicious intent." (2d Am. Compl., Dkt. 83, at 13–14). The County Defendants moved to dismiss the punitive damages claim on the basis "that a Section 1983 plaintiff cannot recover punitive damages against governmental entities or a governmental official in his official capacity." (Mot. Dismiss, Dkt. 96, at 29). In response, Hurdsman argues that the County Defendants did not specifically move to dismiss the punitive damages claim against Gleason. (Resp., Dkt. 98, at 19–20). The Court finds that the County Defendants' argument for dismissal of the punitive damages claim is unclear as to Gleason. (*Compare* Mot. Dismiss, Dkt. 96, at 29 ("a Section 1983 plaintiff cannot recover punitive damages against governmental entities or a *governmental official* in his official capacity") (emphasis added) *with id.* at 30 ("To the extent Hurdsman is seeking to hold the *County* liable for any punitive damages . . . the County *Defendants* request a ruling . . . .") (emphasis added)). For the sake of clarity, the Court will analyze whether Hurdsman has adequately pled a punitive damages claim against Gleason in his individual capacity, since the parties have correctly acknowledged that Hurdsman cannot recover punitive damages from Gleason in his official capacity or from the County.

Under Section 1983, punitive damages may be awarded only if the official conduct is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's

constitutional rights. *Smith v. Wade*, 461 U.S. 30, 37 (1983). The latter standard requires "recklessness in its subjective form," *i.e.*, "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)). The United States Supreme Court has recognized that punitive damages are recoverable against municipal employees when sued in their individual capacities pursuant to a Section 1983 claim. *See Smith*, 461 U.S. at 35.

Hurdsman alleges that he informed Gleason, and Gleason acknowledged that he understood, that the "telephone calls and numbers designated by Hurdsman as privileged attorney-client phone calls were protected by law and would not be listened to, recorded, stored, or provided to third parties." (2d Am. Compl., Dkt. 83, at 5–6). Hurdsman further alleges that Gleason acted "knowing that Hurdsman would rely on these representations to discuss freely what Hurdsman believed would be confidential and privileged information regarding the pending criminal charges against him with his attorneys." (*Id.* at 6). Hurdsman further alleges that he "then did rely on the representations by Gleason . . . and he freely discussed information about his pending criminal charges and ongoing criminal investigations with his attorneys." (*Id.*). Hurdsman states that, not only did Gleason listen and record these calls, but he shared them "with malicious intent to harm and prejudice him, and did harm and prejudice him, by revealing his strategy and defenses against pending criminal charges and other criminal investigations against him, and influencing the ultimate and final disposition of those pending criminal charges and investigations thereto." (*Id.* at 9). Accordingly, Hurdsman contends that Gleason acted "with reckless or callous indifference and/or knowingly, deliberately and willfully with malicious intent." (*Id.* at 13–14).

Hurdsman's second amended complaint states that he informed Gleason about the nature of the calls, that Gleason acknowledged the "calls were protected by law," that Gleason subsequently shared these calls, that Gleason intended to coax Hurdsman into speaking freely in a manner that

might give prosecutors and law enforcement an unlawful tactical advantage, and that Hurdsman

relied on Gleason's acknowledgment. Accordingly, the Court finds that Hurdsman adequately alleges

that Gleason acted with callous indifference to his constitutional rights. Accordingly, he has pled

facts, that if true, may support a claim for punitive damages. Thus, Hurdsman's claim for punitive

damages against Gleason in his individual capacity should not be dismissed.

<u>f. Qualified Immunity</u>

The County Defendants also argue that Gleason is entitled to qualified immunity as to all of

the claims asserted against him. (Mot. Dismiss, Dkt. 96, at 26–28). In response, Hurdsman argues

that he has pled "facts, which, if true, would overcome the defense of qualified immunity." (Resp.,

Dkt. 98, at 18). The Court agrees with Hurdsman that Gleason is not entitled to qualified immunity.

The doctrine of qualified immunity protects public officials from suit and liability for

damages under Section 1983 unless their conduct violates a clearly established constitutional right.

*Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). "To determine whether a public official is

entitled to qualified immunity, [the court must] decide (1) whether the facts that the plaintiff has

alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly

established at the time of the defendant's alleged misconduct." *Ramirez v. Martinez*, 716 F.3d 369, 375

(5th Cir. 2013) (internal quotations omitted). At the motion-to-dismiss stage, a district court must

find that the plaintiff's pleadings assert facts, which, if true, would overcome the defense of qualified

immunity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "Thus, a plaintiff seeking to overcome

qualified immunity must plead specific facts that both allow the court to draw the reasonable

inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity

defense with equal specificity." *Id.* Additionally, "when a defendant asserts a qualified-immunity

defense in a motion to dismiss, the court has an obligation . . . to carefully scrutinize [the complaint]

before subjecting public officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019).

First, the Court has already found that Hurdsman has stated a claim for three constitutional violations: (1) infringement of freedom of speech and association under the First Amendment; (2) illegal search and seizure under the Fourth Amendment; and (3) interference with the attorney-client relationship under the Sixth Amendment. The complaint sufficiently alleges facts as to Gleason's direct and personal involvement in the violative conduct alleged. Accordingly, the Court must now analyze whether Hurdsman has met his burden of showing that his constitutional rights were clearly established at the time of Gleason's actions.[5]

"A right is clearly established when 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Jones v. Lowndes Cty.*, 678 F.3d 344, 351 (5th Cir. 2012)). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011)). While there is no requirement of "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. However, the Supreme Court has cautioned courts "not to define clearly established law at a high level of generality." *Id.* at 742. The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis added). This inquiry "must be undertaken in light of the specific

---

[5] The County Defendants' motion to dismiss argues for the application of qualified immunity to Gleason solely on the first prong of the analysis. (*See* Mot. Dismiss, Dkt. 96, at 27–28). While the Court could find that Gleason has waived his argument on the second prong, the Court will nonetheless analyze the second prong, as the Court finds that Hurdsman's constitutional rights were clearly established at the time of Gleason's actions.

context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (internal quotation marks omitted).

The Court finds that Hurdsman's rights under the First, Fourth, and Sixth Amendments to have his confidential calls with his defense counsel not recorded and shared with law enforcement officers and agents or prosecuting attorneys were clearly established at the time of Gleason's actions.

As to Hurdsman's First Amendment claim, it is clearly established that a prison inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78, 95 (1987) (same); *Hudson*, 468 U.S. at 523 (same). In the specific context of the facts pled in this case, the Court finds that a reasonable officer would have known that it was unconstitutional to assure a detainee that his calls would not be recorded or shared and then to do so after specifically telling the detainee that he would not. Accordingly, the Court finds that Hurdsman's First Amendment right was clearly established at the time of the violation.

As to Hurdsman's Fourth Amendment claim, admittedly, pretrial detainees and prisoners do not enjoy the same constitutional protections as unincarcerated individuals. *See Hudson*, 468 U.S. at 527 (inmate has no reasonable expectation of privacy in prison cell); *Bell v. Wolfish*, 441 U.S. 520, 556 (1979) (constitutional rights of inmates are "limited by the legitimate goals and policies of penal institution"). However, it is well-established that all parties who have a reasonable expectation of privacy in a conversation are protected by the Fourth Amendment. *See Gennusa v. Shoar*, 879 F. Supp. 2d 1337, 1348 (M.D. Fla. 2012), *aff'd sub nom. Gennusa v. Canova*, 748 F.3d 1103 (11th Cir. 2014); *Lonegan*, 436 F. Supp. 2d at 435 ("Although the privilege afforded to attorney– client communications generally belongs to the client, not to the attorney, *see United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991), the existence of robust protections for attorney-client

communications makes [attorney-plaintiffs'] expectation of privacy in their conversations with Detainees reasonable."). It is also well-established that both attorneys and clients have an objectively reasonable expectation of privacy in confidential communications between an attorney and client. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law"). Fourth Amendment protection thus extends to attorneys engaged in confidential communications with their clients and the expectation of privacy in those communications is objectively reasonable. Accordingly, the Court finds that Hurdsman's Fourth Amendment right was clearly established at the time of the violation.

As to the Sixth Amendment violation, the Fifth Circuit has held that "[i]t is well settled that an intrusion by the government upon the confidential relationship between a criminal defendant and his attorney, either through surreptitious electronic means or through an informant, is a violation of the Sixth Amendment right to counsel." *United States v. Zarzour*, 432 F.2d 1, 2 (5th Cir. 1970) (citing *Hoffa v. United States*, 385 U.S. 293 (1966); *Black v. United States*, 385 U.S. 26 (1966)). Accordingly, the Court finds that Hurdsman's Sixth Amendment right was clearly established at the time of the violation.

Accordingly, the Court finds Gleason's assertion of qualified immunity to be unavailing because he has stated a claim for three constitutional violations and these rights were clearly established at the time of Gleason's alleged misconduct.

### g. Leave to Amend

Hurdsman requests leave to amend his complaint. (Resp., Dkt. 98, at 19). The County Defendants oppose leave to amend on the basis that "any amendment would be futile and against the interest of judicial economy." (Reply, Dkt. 100, at 10–11). The Court agrees with the County Defendants. It is true that Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am.*

*Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (cleaned up). That said, a district court need not grant a futile motion to amend. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). Futility is determined under Rule 12(b)(6) standards; an amendment is considered futile if it would fail to state a claim upon which relief could be granted. *Id.* The Court finds that further amendment would be futile and against the interests of judicial economy. Hurdsman has already had two opportunities to recognize and rectify any pleading errors. Further, the parties have engaged in substantial, substantive briefing in response to the County Defendants' often-duplicative motions over the last two years of litigation. (*See, e.g.*, Mots., Dkts. 23, 26, 40, 49/55, 78). Accordingly, the Court will deny Hurdsman's request for leave to amend.

### B. The Motion to Compel

Hurdsman has also filed a motion to compel. In his motion, Hurdsman asks the Court to compel the County Defendants to respond to his First Set of Interrogatories and First Request for Production of Documents to County Defendants (collectively, the "Discovery Requests"). (Mot. Compel, Dkt. 93). Rule 37 requires that a party seeking to compel discovery must confer in good faith before seeking court intervention. Fed. R. Civ. P. 37(a). Correspondence between the parties indicates that Hurdsman has conferred in good faith with the County Defendants. Hurdsman states that he first served his Discovery Requests on the County Defendants on June 16, 2022. (Mot. Compel, Dkt. 93, at 2). On July 18, 2022, the County Defendants objected to the Discovery Requests in their entirety on the basis of qualified immunity and a prior settlement agreement. (*Id.*). On April 6, 2023, May 1, 2023, May 3, 2023, and May 6, 2023, Hurdsman requested complete responses to the Discovery Requests and document production by May 19, 2023, which the County Defendants did not provide. (*Id.*). In response, the County Defendants state that they did not provide discovery responses between March 21, 2023 and May 19, 2023 because, "during the middle of this two (2)-month window, the County Defendants filed their Motion for Reconsideration,"

(Dkt. 40). (Resp., Dkt. 97, at 5). On February 9, 2024, Hurdsman again requested complete responses to the Discovery Requests and document production by February 19, 2024, which the County Defendants did not provide. (Mot. Compel, Dkt. 93, at 3). In response, the County Defendants state that they did not provide discovery responses between January 16, 2024 and March 22, 2024 because they filed their Motion For Permission To Appeal Interlocutory Orders And For Stay Pending Appeal, (Dkt. 78), on the same day their prior motion for stay of discovery pending a ruling on qualified immunity was mooted, (Dkt. 50). (Text Order dated Jan. 16, 2024). They assert that by the time the Court ruled on their motion for interlocutory appeal, (Order, Dkt. 84), Hurdsman's Second Amended Complaint, (Dkt. 83), had already been filed, to which they planned to again assert a qualified immunity defense. (Resp., Dkt. 97, at 5). On March 27, 2024, the Clerk of the Court filed the County Defendants' Motion To Dismiss Plaintiff's Second Amended Complaint. (Dkt. 96). To date, the County Defendants still have not substantively responded to the Discovery Requests.

Hurdsman asserts that the material he seeks is directly relevant to his case—his Discovery Requests "seek information and production of documents directly related to [Hurdsman's] factual allegations and the events that gave rise to this suit." (Mot. Compel, Dkt. 93, at 4). The Court agrees. Given that Hurdsman has met his burden of establishing that he seeks relevant discovery, the burden shifts to the County Defendants to substantiate their objections to the Discovery Requests. *Hobbs*, 2018 WL 3603074, at *2; *see also McLeod*, 894 F.2d at 1485.

The County Defendants have objected to the Discovery Requests on the sole basis that they have again asserted a qualified immunity defense to the Second Amended Complaint, (Dkt. 83), under *Carswell v. Camp*, 54 F.4th 307, 314 (5th Cir. 2022). (Resp., Dkt. 97, at 6–7). The County Defendants contend that Hurdsman is not permitted to obtain discovery from them until the Court rules on the qualified immunity defense in their Motion To Dismiss Plaintiff's Second Amended

Complaint, (Dkt. 96). (Resp., Dkt. 97, at 6–7). The Court has just found that Gleason is not entitled to qualified immunity. Accordingly, the Court will grant the motion to compel. While the Court is certain that the County Defendants will respond in a substantive and timely manner to Gleason's Discovery Requests, the Court will order them to do so within fourteen (14) days of the date of this order.

In his motion to compel, Hurdsman also asks the Court to award him attorney's fees incurred in filing the instant motion. (Mot. Compel, Dkt. 93). In response, the County Defendants argue that their "objection to discovery was substantially justified and an award of expenses would be unjust." (Resp., Dkt. 97, at 8). The Court agrees with the County Defendants. While the Court is concerned about the numerous delays that the County Defendants perpetuated in withholding discovery over the last 23 months since Hurdsman first filed his Discovery Requests, the Court finds that an award of expenses would potentially be unjust. While the County Defendants repeatedly withheld discovery on the basis of qualified immunity, the Court will give the County Defendants the benefit of the doubt that they asserted this defense in good faith. Accordingly, the Court will not award Hurdsman attorney's fees incurred in filing the motion to compel. However, now that the issue of qualified immunity has been laid to rest, the Court encourages the parties to work together regarding discovery moving forward.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that the County Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, (Dkt. 96), is **GRANTED IN PART** and **DENIED IN PART**, and Hurdsman's motion to compel, (Dkt. 93), is **GRANTED**.

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED WITH PREJUDICE**:

(1)  Hurdsman's state wiretapping claim against the County Defendants;

(2)  Hurdsman's state invasion of privacy claim against the County Defendants;

(3)  Hurdsman's claim for compensatory damages against the County Defendants;

(4)  Hurdsman's claim for punitive damages against the County;

(5)  Hurdsman's access-to-courts claim under the First and Fourteenth Amendments; and

(6)  Hurdsman's *Monell* claim.

**IT IS FURTHER ORDERED** that the County Defendants' Motion to Dismiss Plaintiff's

Second Amended Complaint, (Dkt. 96), is **DENIED** in all other respects.

Accordingly, the following claims remain:

(1)  Hurdsman's claim for infringement of freedom of speech and association under the First Amendment;

(2)  Hurdsman's claim for illegal search and seizure under the Fourth Amendment;

(3)  Hurdsman's claim for interference with the attorney-client relationship under the Sixth Amendment;

(4)  Hurdsman's claim for wiretapping under the ECPA; and

(5)  Hurdsman's claim for punitive damages against Gleason in his individual capacity.

**IT IS FURTHER ORDERED** that Hurdsman's request for leave to amend is **DENIED**.

**IT IS FINALLY ORDERED** that the County Defendants shall fully respond to

Hurdsman's First Set of Interrogatories and First Request for Production of Documents to County

Defendants, as outlined in Hurdsman's motion to compel, (Dkt. 93), **on or before June 19, 2024**.

All other relief not expressly granted herein is denied.

**SIGNED** on June 5, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE